Paul F. THOMAS, Plaintiff–Appellant,

v.

UNITED STATES of America and Lake Country Reporter, Inc., Defendants–Appellees.

No. 88–1336.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1989.

Decided Nov. 20, 1989.

Paul F. Thomas argued, Milwaukee, Wis., for plaintiff-appellant.

Mary F. Clark argued, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., Gary R. Allen, William S. Rose, Jr., Asst. Atty. Gen., Jonathan S. Cohen, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for defendants-appellees.

Before POSNER and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

The question presented by this appeal is whether the issuance by the Internal Revenue Service of a press release that contains information about a taxpayer's tax liability drawn from a Tax Court opinion is an unauthorized disclosure of tax-return information, exposing the government to liability for damages under section 7431 of the Internal Revenue Code. The district court answered "no," granted the defendants' motion to dismiss the complaint for failure to state a claim, and dismissed the suit. 671 F.Supp. 15 (E.D.Wis.1987). The suit had named the publisher of the newspaper that carried the government's press release as a defendant along with the government, but section 7431 creates no right of action against anyone other than the United States, and the plaintiff rightly has not appealed from the dismissal of the publisher.

The background of the litigation can be described simply. The plaintiff, Paul Thomas, refused to pay income tax on his wages, contending that they were not taxable income because he had received them in exchange for work of equal value. The Internal Revenue Service assessed a deficiency that Thomas contested in the United States Tax Court, which upheld the assessment—and tacked on an award of damages to punish Thomas for the frivolousness of his suit—in an opinion issued initially in typescript but later published by Commerce Clearing House. See *Thomas v. Commissioner*, 49 T.C.M. 1519 (1985). After the opinion was issued, the IRS prepared and mailed to Thomas's home town newspaper (the *Lake Country* [Wisconsin] *Reporter*) the following press release, which the *Re-porter* published verbatim, without disclosing its source, under the banner "Thomas Loses Appeal in US Tax Court":

Paul F. Thomas, 2509 Nagawicka Road, Hartland, lost his appeal to the U.S. Tax Court, and as a result, will owe more than $15,448 in taxes and penalties for 1980 and 1981, plus $2,000 in damages awarded to the government because his suit was frivolous.

Thomas had argued that the money he earned in those years was not taxable income because it was received in an equal exchange for his labor. In its decision, the Court stated, "Clearly, the compensation received ... is the 'Fruit of his labor' and therefore represents gain derived from labor which may be taxed as income."

In awarding damages to the government, the Court recognized the fact that, throughout the pretrial proceedings, Thomas had been informed that his position had been previously adjudged frivolous and groundless but that he still persisted in presenting it, thereby forcing the government to bear the expense of the trial.

Thomas does not deny that all the information in the release and in the article was drawn from the Tax Court's opinion (except his address—and he does not argue that the disclosure of his address violated the statute) and is accurate. Yet the actual sum of taxes and penalties assessed in the opinion is $15,934.07, not $15,448 as stated in the press release and newspaper article; it appears that whoever prepared the press release failed to include the last penalty ($485.95). There is no literal inaccuracy, because the press release prefaces the $15,448 figure with the words "more than"; in any event Thomas does not suggest that the discrepancy shows that the Internal Revenue Service must have gotten the figures from somewhere other than the Tax Court's opinion. The mistake, if that is what it should be called, was in his favor; it lowered the amount that he was represented as having been assessed. And it more probably resulted from a failure to add carefully the figures in the Tax Court's opinion than from the use of a different

source to determine Thomas's liability for taxes and penalties.

Section 7431 was enacted in 1982 against a rich background of abuses by the Internal Revenue Service of the confidentiality of federal tax returns, abuses that were believed to undermine voluntary compliance with the income tax laws. (We discussed the legislative history in *Rueckert v. Internal Revenue Service*, 775 F.2d 208, 210–11 (7th Cir.1985).) The statute empowers federal district courts to award a taxpayer damages against the United States if any federal officer negligently or deliberately "discloses any return or return information with respect to [the] taxpayer in violation of any provision of section 6103" of the Code; the terms "return" and "return information" are defined as in that section. See § 7431(c). We go, therefore, to section 6103, the provision that makes federal tax returns confidential with exceptions that do not include the issuance of press releases by the Internal Revenue Service. "Return information" is defined very broadly in § 6103(b)(2) as

> (A) A taxpayer's identity, the nature, source, or amount of his income payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and
>
> (B) any part of any written determination or any background file document relating to such written determination ... which is not open to public inspection.

Thomas's argument is a simple one. Among the items of information that the IRS made public in its news release about his case were Thomas's identity, his tax liability, and the fact that penalties had been assessed against him; these items are "return information" within the meaning of section 6103, hence of section 7431 as well; they were released without authorization, and hence in violation of the statute. The government counters with a variety of arguments, of which the most far-reaching is that Thomas waived the confidentiality of his tax return by contesting the IRS's deficiency in the Tax Court. Proceedings of the Tax Court are public, and Thomas failed to seek or obtain a protective order sealing his tax return, which the government placed in the record—as § 6103(h)(4) authorized it to do.

We need not decide whether there is any merit to this argument, which would find waiver in the government's own action of forcing Thomas to litigate by assessing a tax deficiency on him, and which could encumber Tax Court proceedings with endless requests for protective orders. Thus we need not take sides in the conflict between the Ninth and Tenth Circuits over whether the disclosure of return information in a judicial record bars the taxpayer from complaining about any subsequent disclosure. In *Rodgers v. Hyatt*, 697 F.2d 899, 906 (10th Cir.1983), the Tenth Circuit held that it did not, but the Ninth Circuit reached the opposite conclusion in *Lampert v. United States*, 854 F.2d 335, 338 (9th Cir.1988), saying that "once tax return information is made a part of the public domain, the taxpayer may no longer claim a right of privacy in that information."

For there is a narrower ground on which the government is entitled to prevail in this case.

The information disclosed in the press release did not come from Thomas's tax return—not directly, at any rate. It came from the Tax Court's opinion. The disclosure of return information by the judges of the Tax Court in their opinion was authorized by the same statutory provision that authorized the IRS to disclose it in the Tax Court proceeding, § 6103(h)(4), and Thomas does not question the lawfulness of either disclosure. We need not decide whether

the disclosure of the information by the Tax Court removed the protective cloak of section 7431 and allowed the Internal Revenue Service to go back to Thomas's file, pull out the return, and publicize so much of the information found there as had been disclosed in the opinion. But it could publicize the opinion itself, just as the clerk of the Tax Court could, as he did, send the opinion to a commercial publisher, without violating section 7431. We do not retreat from our statement in *Wiemerslage v. United States*, 838 F.2d 899, 902 (7th Cir. 1988), that the statute is "a general prohibition against the disclosure of tax return information unless expressly authorized by an exception." But it is not a prohibition of any kind against the disclosure of opinions of the Tax Court.

We may seem by this ruling to be condoning the "laundering" of confidential information, or indulging the fiction (unmasked just months ago by the Supreme Court in interpreting another statute requiring the government to respect the citizen's privacy, *U.S. Dept. of Justice v. Reporters Comm. for Freedom of the Press*, — U.S. —, 109 S.Ct. 1468, 1476–80, 103 L.Ed.2d 774 (1989), interpreting 5 U.S.C. § 552(b)(7)(c)) that every item of information contained in a public document is known to the whole world, so that further dissemination can do no additional harm to privacy—as if only secrets could be confidences. But this is not a case where the IRS, having lawfully disclosed return information in one public place, wishes to disclose it in another and more public place, as in *Rodgers* or *Lempert*. It is a case where the IRS, having beaten Thomas in the Tax Court, wishes to trumpet its victory to his neighbors. Whether this is a fair and effective way to administer a tax system may be debated; but it is not the publicizing of a person's tax return; it is the publicizing of a judicial opinion which, for the judges' own purposes—and the judges of the Tax Court do not work for the Internal Revenue Service—contains information that has its ultimate source in a tax return lawfully disclosed to the judges. There is an analogy to the privilege in defamation law for fair summaries of official reports. See,

e.g., *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 270–73 (7th Cir. 1983).

 The Internal Revenue Service may not publicize tax returns, but it may publicize Tax Court opinions. The President of the United States—who like every other federal official is subject to § 7431—does not expose the United States to liability if on a national broadcast he reads aloud the opinion in *Thomas v. Commissioner* as a warning to tax protesters and other tax delinquents. Nothing in the background of the statute suggests so broad a scope as Thomas is urging and so direct a collision with the policies that animate the free-speech clause of the First Amendment. Cf. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). It strikes us that the government should be allowed to tell its side of the tax-protester story; but however that may be, we believe that the definition of return information comes into play only when the immediate source of the information is a return, or some internal document based on a return, as these terms are defined in § 6103(b)(2), and not when the immediate source is a public document lawfully prepared by an agency that is separate from the Internal Revenue Service and has lawful access to tax returns. The Tax Court is such an agency.

██ The statute did not anticipate Thomas's argument and make specific provision for it, but to accept his argument would complicate the administration of the statute and impair freedom of debate and expression without advancing the statutory purpose, which was to correct abuses of confidentiality. The IRS's tactic of publicizing Mr. Thomas's defeat in the Tax Court to his home-town newspaper may be tawdry, mean, or inspired; it may be thought to intimidate taxpayers or, more plausibly, to warn them off a course of conduct that can only increase their tax liability. But even if what the Internal Revenue Service did here is an abuse of governmental power, it

is not the sort of abuse at which § 7431 was aimed or for which it makes provision.

AFFIRMED.