**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-20973

DALTON M. BASKIN,

Plaintiff-Appellant,

VERSUS

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

February 17, 1998

Before DeMOSS and DENNIS, Circuit Judges, and LEE, District Judge.[*]
DENNIS, Circuit Judge:

The plaintiff-appellant, Dalton M. Baskin, brought this action for civil damages under 26 U.S.C. §7431 for alleged unauthorized disclosures of tax return information in violation of 26 U.S.C. §6103. The district court granted in part and denied in part a motion for partial summary judgment filed by the United States, the defendant-appellee. Baskin appealed from that judgment insofar as the court held that a disclosure of information that was made on

---

[*]District Judge of the Southern District of Mississippi, sitting by designation.

1

April 28, 1993 did not violate the terms of 26 U.S.C. §6103.  We affirm.

The information in question was not "return information" because it was not data "received by, recorded by, prepared  by, furnished to, or collected by" the Internal Revenue Service (IRS) as defined by 26 U.S.C. §6103(b)(2)(A).  Baskin was an employee of the Houston Police Department and chairman of the Houston Police Officers Pension System.  A grand jury investigating non-tax crimes obtained information that Baskin had recieved checks from a particular source that created a conflict between Baskin's personal interests and his duties as chairman.  An IRS Special Agent who was assigned to provide staff support to the grand jury under the supervision of the United States Attorney gave copies of the checks obtained by the grand jury to officers of the Internal Affairs Division of the Houston Police Department.  The United States Attorney had agreed that the Internal Affairs Division officers would be put on a grand jury list as persons having access to the information learned by the grand jury.  The IRS Special agent's possession and transfer of the data to the Houston police officers while on temporary assignment to the grand jury did not make that data "return information" for purposes of §6103 because the agent's action did not cause the data to be received by, recorded by, prepared by, furnished to, collected by or transferred from the Internal Revenue Service.

## Background

2

In the spring of 1993, a grand jury investigation was delving into the possible non-tax offenses of a number of persons other than the plaintiff. This investigation was headed by the United States Attorney for the Southern District of Texas who, in order to facilitate her inquiry, had assigned to the grand jury a number of federal agents. Specificaly, IRS Special Agents Ellen Rodriguez and Lafayette Prince along with Federal Bureau of Investigations (FBI) Special Agent Justin Fox were all attached to the grand jury investigation. During the course of the grand jury's probe, a grand jury subpoena brought to light six checks made out to Dalton Baskin in the amount of $6,000.00 each.[1] These checks had been issued by City Associates, Inc., a company connected with one of the parties being investigated, and were reportedly payments to Baskin for consulting work.

At the time the checks were produced, Fox, Prince and Rodriguez were aware that Baskin was a member of the Houston Police Department (HPD) and heavily involved with the Houston Police Officer's Pension System. For reasons that are not made clear by the record, Fox first discussed Baskin's activities with Rodriguez around 1991. Subsequently, in the fall of 1992, Prince and Fox actually met with Baskin and, in October 1992, Rodriguez obtained copies of the plaintiff's tax returns from 1989-1992. Baskin was "targeted" by the FBI and IRS for a joint investigation by late 1992 or early 1993.

---

[1] It is unclear from the record who or what entity actually produced the six checks pursuant to the grand jury subpoena but apparently it was either Milton McGinty or City Associates, Inc.

3

It was during this intermittent inquiry into the plaintiff's activities that Fox, Prince and Rodriguez began their assignment with the grand jury. While the grand jury proceeding was progressing, federal authorities learned that the Internal Affairs Division (IAD) of the HPD was interested in the federal investigation. After discussions with IAD officers, the federal prosecutors decided to place the IAD officers on the grand jury list so that they could be made privy to the grand jury proceedings. However, it is unclear whether this step was ever taken. *See* Fed. R. Crim. P. 6(e)(3). In addition, a meeting was scheduled between those federal agents assigned to the grand jury and IAD officers.

On April 28, 1993, FBI Special Agent Fox, IRS Special Agents Rodriguez and Prince met with three members of the Houston Police Department's IAD, Lieutenant Greg Neely, Sergeant Roy House, and Sergeant Martin Fite at the IRS agents' office. During the meeting, IRS Special Agent Rodriguez[2] disclosed to the three police officers the existence of six checks made payable to Baskin for consulting work performed for City Associates, Inc., a company connected to a party the federal authorities were investigating. The checks represented $36,000 in income for the plaintiff.

Following the April 1993 encounter, interactions occurred

---

[2]None of the federal agents present at the meeting remember who specifically disclosed the six checks in question to the Houston police officers. However, the final determination of this issue is immaterial to our inquiry and we can assume for the purposes of reviewing the district court's summary judgment ruling that the plaintiff/non-movant's allegation that Rodriguez disclosed the six checks is accurate.

4

between the HPD, the United States prosecutors and grand jury, and Baskin for over a year.  The nature and substance of this activity is not relevant on this appeal.  Baskin was never indicted by a federal or state grand jury.  Baskin claims, however, that he was forced to retire from the HPD as a result of a third-party's allegations and the federal agent's allegedly illegal disclosures of the six checks to the HPD's IAD.

In the present suit, filed in May 1994, the plaintiff alleged that government employees, Rodriguez and Prince, made a number of illegal disclosures of "return information" in violation of the Internal Revenue Code (IRC, Title 26) from April 1993 until 1994. *See* 26 U.S.C. §6103.  The district court entertained motions for summary judgment from both sides and decided all of the issues raised.  Of significance herein, the district court held that the disclosure of the six checks by IRS Special Agent Rodriguez on April 28, 1993 was not an improper disclosure of "return information" because the checks in question were grand jury information and not IRS "return information" as defined by the IRC. *See* 26 U.S.C. §6103(b)(2)(A).  In other words, because the six checks had not been filed with and disclosed by the IRS there had been no violation of the IRC for which the government could be held liable.  Additionally, the district court held that the assistance rendered the grand jury investigation by IRS Special Agent Rodriguez did not somehow convert the grand jury information, i.e. the six checks, into return information.  It is from this determination alone that Baskin appeals.  We review the district

court's grant of the defendant's motion for summary judgment on this issue *de novo*. *Stults v. Conoco, Inc.*, 76 F.3d 651, 654 (5th Cir. 1996).

## Analysis

The Internal Revenue Service is a unique government organization which has, in the fulfillment of its statutory function, assembled information pertaining to virtually every citizen in the United States. *See* Note, Elena M. Gervino, *Tax Law-The Internal Revenue Code: Interpreting the 'Haskell Amendment' to 26 U.S.C. §6103-Defining 'Return Information,'* 9 W. New Eng. L. Rev. 269, 270-1 (1987)("The IRS has more information about more people than any other agency in this country."). Prior to 1976, the material gathered and recorded by the IRS was readily available to other agencies of the government pursuant to rather lax disclosure polices. *Stokwitz v. United States,* 831 F.2d 893, 894 (9th Cir. 1987). In fact, the IRS was accused of having becoming a virtual "'lending library'" for the government. *Id.* at 894(quoting, 122 Cong. Rec. 24013 (1976)(remarks of Sen. Weiker)). The use of this information in the mid-1970's by other governmental agencies had reached such a prodigious level that Congress became concerned with the possible use of the IRS as a political tool. *Id.* at 894-895(quoting and citing, 122 Cong. Rec. 24013 (1976)).

In 1976, in response to these perceived abuses and in order to significantly tighten the restrictions pertaining to the use of information collected by the IRS by other government agencies,

6

Congress enacted a general prohibition against the disclosure of information complied by the IRS.  Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520 (1976); *see Church of Scientology of California v. Internal Revenue Service,* 484 U.S. 9, 16 (1987); *Johnson v. Sawyer,* 120 F.3d 1307, 1317 (5th Cir. 1997).  This general prohibition, codified in section 6103(a) of the Internal Revenue Code, states that

> no officer or employee of the United States...shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section....

The exceptions to this general rule of non-disclosure are legion, ranging from disclosure of a taxpayer's address to the National Institute for Occupational Safety and Health for the purposes of locating people who may have been exposed to occupational hazards, §6103(m)(3), to information furnished to the Department of Commerce for statistical use, §6103(j). However, none of the multitude of specific exceptions are relevant to the present matter.

The terms "return" and "return information" found in IRC §6103(a) are terms of art specifically defined by the statute.  A "return" is defined as

> any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of the return so filed.  26 U.S.C. §6103(b)(1).

"Return information," a more comprehensive term and of paramount importance herein, is delineated as

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.... 26 U.S.C. §6103(b)(2)(A).

Subsequent to passage of the more restrictive §6103 in 1976, and in order to give teeth to the general prohibition against the disclosure of return and return information, IRC §7431 was enacted giving an aggrieved taxpayer a cause of action for damages directly against the United States for any disclosure of return or return information knowingly or negligently made by an employee or officer of the United States that was not the result of a good faith but erroneous interpretation of §6103. *See Thomas v. United States,* 890 F.2d 18, 20 (7th Cir. 1989)("Section 7131 was enacted in 1982 against a rich background of abuses by the Internal Revenue Service of the confidentiality of federal tax returns....").

Section 7431, in pertinent part, provides:

**§ 7431. Civil Damages for unauthorized disclosure of returns and return information.**

**(a) In General. (1) Disclosure by employee of United States**. If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

* * *

8

**(e) Return; return information**. For purposes of this section, the terms "return" and "return information" have the respective meanings given such terms in section 6103(b).

* * * *

Baskin seeks damages pursuant to IRC §7431 alleging that an employee of the United States, IRS Special Agent Rodriguez, disclosed return information to the IAD of the HPD in the form of the six checks payable to the plaintiff in violation of the general proscription created by §6103(a). Baskin contends principally that, regardless of the fact that the checks had been procured pursuant to a grand jury subpoena and that Agent Rodriguez was in possession of the checks solely through her work with the grand jury, her actions violated §6103 because: (1) Section 6103 defines "return information" to include the nature, source or amount of a taxpayer's income and expressly provides that no officer or employee of the United States shall disclose "return information" obtained by him in any manner in connection with his service as such an officer; (2) The information about Baskin's consulting income was "return information" as defined by §6103(b)(2)(A) because IRS Special Agent Rodriquez undertook a non-grand jury investigation of Baskin in late 1992 or early 1993. Therefore, her receipt of the information caused it to be "received by,...furnished to or collected by the Secretary;" and (3) Section 6301(d) provides that return information may be disclosed to a state agency administering state tax laws "only upon the written request by the head of such agency" and subject to other

9

conditions. Therefore, §6301(d) was violated when Rodriquez disclosed the six checks to local officials other than for tax administrative purposes and without a written request of the state or local tax agency.

## 1.

Baskin's first argument is based on an incomplete reading of §§ 6301 and 7431. In order to prove a violation of §6301(a) and recover under §7431, the plaintiff must demonstrate both that an officer or employee of the United States disclosed information and that the data disclosed was either a return or return information with respect to a taxpayer. Contrary to Baskin's argument, §6103(b)(2) does not define "return information" merely as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts...." Section 6103(b)(2) expressly states that "[t]he term 'return information' means--" the forgoing information or "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability" of a taxpayer. Therefore, to be "return information" any information must first be "received by, recorded by, prepared by, furnished to, or collected by" the IRS. *Id*. The plain language of the statute reveals that "return information" must be information which has somehow passed through, is directly from, or generated by the IRS. *See Ryan v. United States,* 74 F.3d 1161, 1163 (11th Cir. 1996)("[T]he statutory

10

definition of 'return information' confines it to information that has passed through the IRS."); *Thomas,* 890 F.2d at 21("[W]e believe that the definition of return information comes into play only when the immediate source of the information is a return, or some internal document based on a return, as these terms are defined in §6103(b)(2)...."); *Stokwitz,* 831 F.2d at 896("[T]he central fact evident from the legislative history, structure, and language of section 6103 (including the definitions of 'return and return information') [is] that the statute is concerned solely with the flow of tax data to, from, or through the IRS."). In sum, section 6103 requires that the source of the disclosed information must have been the IRS in order for there to be a violation of the general prohibition against the disclosure of return information. *See also Johnson,* 120 F.3d at 1323(a violation of §6103 is premised on the source of the information.).

From the summary judgment evidence of record, the district court concluded that the tax information received under subpoena by the grand jury and in the custody of those federal agents assisting with a non-tax grand jury proceeding was not filed with or disclosed by the IRS, and was not protected by section 6103. *Baskin v. United States*, 1996 WL 512384, at *7 (S.D. Tex. June 21, 1996)(citing S. Rep. No. 94-938, 94th Cong., 2d Sess. 330, reprinted in 1976 U.S.Code Cong. & Admin. News 3759 (disclaiming any intention to limit the right of an agency or other party to obtain returns or return information directly from the taxpayer through the applicable discovery procedures.)); *Commodity Futures*

11

*Trading Comm'n v. Collins*, 997 F.2d 1230, 1233 (7th Cir. 1993)(Section 6103 "does not block access, through pretrial discovery or otherwise, to copies of tax returns in the possession of litigants; all it prevents is the IRS's sharing tax returns with other government agencies.... The subpoena is directed not at the returns, which remain safely locked in IRS's files, but at copies in the possession of the individual.").

We agree with the district court's conclusions. It should be noted, however, that the district court's reference only to information "filed with" the IRS as falling within the definition of return information was not intended to exclude from the meaning of that term information received by the IRS by other means. *E.g. see Huckaby v. United States*, 794 F.2d 1041, 1048 (5th Cir. 1986)("Return information includes the taxpayer's identity, the fact that the taxpayer is under investigation or subject to further investigation, and data that the IRS has collected about a return."). The "filed with" requirement is appropriate when determining whether information falls under the definition of "return." 26 U.S.C. §6103(b)(1). To be "return information," the information need not be filed; the statute requires only that the data be "received by, recorded by, prepared by, furnished to, or collected by" the IRS with respect to the legislatively prescribed purposes. 26 U.S.C. §6103(b)(2)(A).

2.

We also agree with the district court that the record evidence

does not support a reasonable inference that the information in question was furnished to the IRS by Special Agent Rodriquez. The six checks at issue in the present case were obtained pursuant to a grand jury subpoena and remained within the possession of agents of the grand jury.

The plaintiff seeks to create the required relationship between the six checks and the IRS by pointing to IRS Special Agent Rodriguez's assignment to assist the grand jury and her possession of the checks at the time of their disclosure. Rodriguez, he contends, is the conduit through which the checks passed through the IRS and thus became "return information." We disagree for substantially the same reasons that a similar argument was rejected by the Eleventh Circuit in *Ryan v. United States,* 74 F.3d 1161 (11th Cir. 1996). In *Ryan*, the IRS was involved in a prosecution of a criminal defendant for various drug and tax offenses. To this end, at least one IRS Special Agent was assigned to assist the local U.S. Attorney's Office in the gathering of information. *Ryan*, 74 F.3d at 1163. During the prosecution of the case, the prosecutor disclosed information to the press in the form of memoranda which did contain tax related information or had been formulated from such information. *Id.* The plaintiff in *Ryan* alleged that these memoranda contained "return information" because the information had been gathered with the assistance of an IRS Special Agent, thus making information contained in the memoranda "data received and collected" by the IRS. *Id.* In rejecting this assertion, the *Ryan* court pointed to the simple fact that this

13

information had been collected by and was in the custody of the Department of Justice, i.e. the U.S. Attorney's Office, and was not information belonging to the IRS. *Id.* The assistance rendered by an IRS Special Agent to a criminal investigation did not change this fundamental fact or the nature of the information gathered. Therefore, the source of the information for the prosecution's memoranda was the information collected by his office, not the IRS. The assistance rendered a grand jury investigation by an IRS Special Agent does not transform grand jury information into return information. Accordingly, we conclude that without evidence of a transfer of the data from the Department of Justice to the IRS and a subsequent disclosure of it by the IRS as the source of the revelation, a violation of §6103 cannot be found.

In the present case, the record does not indicate the existence of any persuasive evidence that the checks were ever received, collected, recorded by or furnished to the IRS. As the district court pointed out, its conclusion that the record evidence decisively indicates that the checks did not become data in the custody of the IRS is bolstered by other factors. As in *Ryan*, information collected by the United States Attorney's Office, even with the assistance of an IRS Special Agent, is not information belonging to the Secretary of the Treasury--it is within the custody of the Attorney General or the Department of Justice. *Baskin*, 1996 WL 512384, at *7(citing *Ryan*, 74 3d at 1163.). In addition, because the six checks payable to Baskin from City Associates, Inc., were submitted to and within the custody of the

14

grand jury, they were protected from disclosure by Fed.R.Crim.P. 6(e).[3]  *Id.*   Moreover, the IRS's internal rules inform its personnel that "[i]nformatiion which a Service employee receives or develops while acting as an agent of a non-tax grand jury is not return information."  *Id*. at *9(quoting Internal Revenue Manual §1272, ch. 27(70)(3)).

3.

There was no violation of § 6301(d) for the same reasons we have stated above.  Section 6301(d) governs the disclosure of tax returns and tax return information to state and local tax agencies. Because the information disclosed by Rodriquez was not tax returns or tax return information Baskin's argument based on this alleged violation is also without merit.

## Conclusion

The source of the six checks at issue in this case was a grand jury subpoena and not the Internal Revenue Service.  The six checks in the custody of the United States Attorney were not transferred to the custody of the IRS.  Therefore, the six checks were not "return information" as defined by IRC §6103(b)(2)(A). Consequently, disclosure of copies of the checks to the HPD's IAD

---

[3]Fed. R. Crim. P. 6(e)(2)*General Rule of Secrecy.*
A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision *shall not disclose* matters occurring before the grand jury, except as otherwise provided for in these rules. (emphasis added)

officers did not constitute a disclosure of return information in violation of §6103(a). Moreover, the actions by the IRS Special Agent while assigned to the grand jury did not transform the information obtained by the grand jury into "return information." The decision of the district court is AFFIRMED.