**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JERRY V. RICE and JVR
ACCOUNTING, INC., formerly known as
Rice and Associates, C.P.A., P.C. ,

    Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,
INTERNAL REVENUE SERVICE,
BERNARD BARELA, GEORGE LUNA,
MARGARET RICHARDSON, and
LAURA CRIEL,

    Defendants-Appellees.

No. 97-2276

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-96-78-JC)

---

Jerry V. Rice, pro se.

Stephen McIlwain, Albuquerque, New Mexico, for Plaintiff-Appellant JVR
Accounting, Inc.

Jonathan S. Cohen (Karen D. Utiger with him on the brief), Tax Division, Department of
Justice, Washington, D.C., for Defendants-Appellees.

---

Before **SEYMOUR**, Chief Judge, **BALDOCK**, and **BRORBY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

In March 1994, a jury convicted Plaintiff Jerry V. Rice on two counts of filing a false tax refund claim and three counts of making and subscribing a false tax return in respective violation of 18 U.S.C. § 287 and 26 U.S.C. § 7206(1).  The district court imposed a thirty-month term of imprisonment on Rice, ordered him to pay restitution, and fined him $20,000.[1]  Consistent with its policy of publicizing successful tax prosecutions, the Internal Revenue Service (IRS) issued two press releases regarding the criminal proceedings against Rice.  The first release, issued March 2, 1994, reported Rice's conviction.  See Addendum A.  The second release, issued June 13, 1994, reported Rice's sentence.  See Addendum B.

Rice, a certified public accountant and lawyer, subsequently filed a pro se civil action against the United States, the IRS, and those officials responsible for issuing the press releases, alleging that Defendants wrongfully disclosed confidential tax information about him.  The district court dismissed all but three of Rice's claims pursuant to Fed. R. Civ. P. 12.  Remaining were (1) a claim against the United States arising under the Internal Revenue Code, 26 U.S.C. §§ 6103 & 7431; (2) a claim against the United States arising under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80; and

---

[1]  The district court later reduced Rice's sentence to twenty-four months imprisonment.  See United States v. Rice, 52 F.3d 843 (10th Cir. 1995), after remand, No. 95-2174, 1996 WL 44452 (10th Cir. 1996) (unpublished).

2

(3) a claim against the IRS arising under the Federal Privacy Act, 5 U.S.C. § 552a.[2]

Following discovery, the United States and IRS moved for summary judgment pursuant to Fed. R. Civ. P. 56 on the remainder of Rice's claims. In a thorough memorandum opinion, the district court concluded that no genuine issue of material fact existed as to whether the two press releases disclosed confidential tax information about Rice. The court found that all the information contained in the press releases came from public documents and proceedings. Specifically, the court found that to prepare the releases, an IRS public affairs officer had reviewed the indictment against Rice, attended his trial and sentencing, and researched the possible criminal penalties for his crimes. These the court found were the only sources for the information contained in the press releases. Accordingly, the district court held that Rice had no claim against the United States or the IRS for violating the confidentiality provisions of the Internal Revenue Code. The court further determined that because the IRS had not released confidential taxpayer information about Rice from its records, but obtained the information for the releases from public sources, he similarly had no claim against Defendants under the Federal Torts Claim Act or the Federal Privacy Act.

---

[2] Rice's accounting firm, JVR Accounting, Inc., (formerly known as Rice and Associates, C.P.A., P.C.), filed a separate complaint seeking damages from the United States and IRS under 26 U.S.C. §§ 6103 & 7431, for wrongful disclosure of confidential tax information. Because the factual basis for JVR's complaint was identical to the factual basis for Rice's complaint, the district court consolidated the complaints. All references to Defendant Rice in our opinion may be deemed to include JVR Accounting, Inc.

3

On appeal, Rice raises two issues worthy of review. First, Rice contends that because the information contained in the press releases was, as a matter of law, confidential tax return information, Defendants necessarily violated the confidentiality provisions of the code by issuing the releases. In the alternative, Rice contends that genuine issues of material fact precluding summary judgment exist as to the source of the information contained in the press releases. Our jurisdiction arises under 28 U.S.C. § 1291. We review a grant of summary judgment de novo employing the same legal principles as the district court. Kane v. Capital Guardian Trust Co., 145 F.3d 1218, 1221 (10th Cir. 1998). Applying these principles, we affirm.

I.

Section 6103(a) of the Internal Revenue Code prohibits disclosure of tax return information unless expressly authorized by an exception. See generally Baskin v. United States, 135 F.3d 338, 340-42 (5th Cir. 1998) (discussing history of disclosure prohibition). Section 6103(a) provides generally that "no officer or employee of the United States, . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise under the provisions of this section." 26 U.S.C. § 6103(a)(1). Subsection (b) defines "return information" as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the

4

taxpayer's return was, is being, or will be examined or subject to other investigation or processing, . . . ." Id. § 6103(b)(2)(A). One of the numerous exceptions to § 6103's general prohibition allows disclosure of "return information" in federal court where "the taxpayer is a party to the proceedings." Id. § 6103(h)(4)(A).

Section 7431(a) of the code in turn provides a cause of action to an aggrieved taxpayer for a violation of § 6103: "If any officer or employee of the United States knowingly, or by reason of negligence, . . . discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States . . . ." 26 U.S.C. § 7431(a)(1). Subsection (b) of § 7431 provides an exception to liability where the officer's or employee's disclosure "results from a good faith, but erroneous interpretation of section 6103." Id. § 7431(b)(1).

## II.

Rice complains that the press releases contain "return information" as defined in § 6103(b) because they identify him, his accounting firm, and the fact that he unlawfully claimed tax refunds for the years 1988 and 1989, based on false withholdings. Regardless of the source of the information contained in the releases, Rice claims that the government's dissemination of such information without his authorization violated § 6103(a). In other words, Rice asks us to hold that an IRS press release which contains information about a taxpayer's criminal tax liability necessarily constitutes an

5

unauthorized disclosure of tax return information, exposing the government to liability under § 7431. We decline to do so.

The Seventh Circuit rejected an identical argument in Thomas v. United States, 890 F.2d 18 (7th Cir. 1989). In that case, the taxpayer claimed a violation of § 6103, although he admitted that the immediate source of the information contained in an IRS press release about him was a tax court opinion. The court acknowledged that the disclosed information may have come indirectly from the taxpayer's tax return. Notwithstanding, the court stated:

> Nothing in the background of the statute suggests so broad a scope as Thomas is urging and so direct a collision with the policies that animate the free-speech clause of the First Amendment. . . . [W]e believe that the definition of return information comes into play only when the immediate source of the information is a return, or some internal document based on a return, as these terms are defined in § 6103(b)(2), and not when the immediate source is a public document lawfully prepared by an agency that is separate from the Internal Revenue Service and has lawful access to tax returns.

Thomas, 890 F.2d at 21. We adopt this reasoning. If, as the government claims, the two press releases about which Rice complains were based solely on public documents and proceedings, i.e. the IRS public affairs officer's review of the indictment, her attendance at trial and sentencing, and her research into the possible criminal penalties, then Rice's assertion that the government violated § 6103 by issuing the press releases must fail.

Despite Rice's assertion, our decision in Rodgers v. Hyatt, 697 F.2d 899 (10th Cir. 1983), is not to the contrary. In Rodgers, we rejected the government's argument that the

6

disclosure of return information in a public record bars a taxpayer from complaining about any subsequent disclosure of such information. Accord Chandler v. United States, 887 F.2d 1397, 1398 (10th Cir. 1989); Johnson v. Sawyer, 120 F.3d 1307, 1317-19 (5th Cir. 1997); Mallas v. United States, 993 F.2d 1111, 1120-21 (4th Cir. 1993). Contra Rowley v. United States, 76 F.3d 796, 799-802 (6th Cir. 1996); Schrambling Accountancy Corp. v. United States, 937 F.2d 1485, 1489-90 (9th Cir. 1991). Instead, we held that an IRS agent's prior "in court" testimony at a hearing to enforce an IRS summons did not alone justify the agent's subsequent out of court statement to a third party regarding an ongoing investigation of the taxpayer. Rodgers, 697 F.2d at 904-06. We upheld the jury's verdict in favor of the taxpayer and its implicit finding that the agent had not obtained his information from the court hearing–a public proceeding, but rather had obtained it from internal documents based on the taxpayer's tax return. Thus, under both Thomas and Rodgers, whether information about a taxpayer may be classified as "return information" invoking application of § 6103 turns on the immediate source of the information.

III.

Rice next argues that genuine issues of material fact regarding the source of the information contained in the press releases preclude summary judgment in favor of the government. As movant, the government bears the initial burden under Fed. R. Civ. P. 56 to present evidence showing the absence of a genuine issue of material fact as to the

7

source of the information contained in the press releases. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to Rice to present evidence showing that a genuine issue of material fact exists as to the source of the information. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). To carry his burden, Rice must present more than a scintilla of evidence. He must set forth evidence sufficient for a reasonable jury to return a verdict in his favor. See Hom v. Squire, 81 F.3d 969, 973-74 (10th Cir. 1996).

Our review of the record reveals that Rice has failed to carry his burden. Rice has not offered evidence upon which a reasonable jury could conclude that the IRS press releases contained "return information" exposing the government to liability under § 7431. As the district court properly concluded, Rice did not present sufficient evidence to counter the government's showing that the information contained in the press releases was based solely on public documents and proceedings.[3]

Both in her affidavit and during her deposition, the IRS public affairs officer assigned to cover Rice's prosecution stated that she learned about the charges against Rice either from the criminal investigation division of the IRS or the United States

---

[3] In addition to dissemination of the press releases, Rice also complains that an IRS appeals officer phoned one of Rice's clients in violation of 26 U.S.C. §§ 6103 & 7431, to inform him that Rice could no longer represent the client before the IRS due to Rice's tax crime convictions. Like the district court, our review of the record reveals that the appeals officer gathered his information from the publicity surrounding Rice's trial and sentencing, rather than from internal IRS documents containing "return information."

Attorney's office. She further stated that she procured a copy of the indictment and attended Rice's entire trial from February 28 through March 2, 1994. After Rice's trial, she researched the possible penalties for Rice's crimes and attended his sentencing hearing on June 13, 1994. She repeatedly stated that she attended Rice's entire trial and sentencing. During both the trial and sentencing, the public affairs officer took extensive notes which are a part of the record and reflect the information contained in the releases.

The record simply belies Rice's claim that the public affairs officer used "return information" in preparing the press releases. Rice submitted an affidavit stating he did not believe the public affairs officer attended his entire trial. He also points out that during the initial stages of discovery, the government, in answering an interrogatory, indicated that the public affairs officer attended Rice's trial on February 28 and March 1. Setting aside for the moment the government's overwhelming evidence to the contrary, this evidence may suggest that the public affairs officer did not attend Rice's entire trial. But that in itself does not necessarily lead to the conclusion that the officer obtained the information for the press releases from an impermissible source. To support a jury verdict, evidence must be based on more than mere speculation, conjecture, or surmise. See Brown v. Reardon, 770 F.2d 896, 904 (10th Cir. 1985). Moreover, Rice's affidavit, which does nothing more than state his belief that the facts set forth in the public affairs officer's affidavit and deposition are untrue, is insufficient to create a genuine issue of material fact regarding the source of the information. See Federal Deposit Ins. Corp. v.

9

Oaklawn Apts., 959 F.2d 170, 175 (10th Cir. 1992).

Rice simply has failed to present more than a scintilla of evidence that the public affairs officer obtained the information for the IRS press releases from an impermissible source. Like it or not, a trial is a public event. The IRS press releases in this case did not publicize Rice's tax return information; they publicized public proceedings and documents. While those proceedings and documents may have revealed "return information," that revelation was proper under the exception to § 6103 allowing such disclosure in federal court where the taxpayer is a party to the proceedings. 26 U.S.C. § 6103(h)(4)(A).[4]

The judgment of the district court as to both Rice and JVR Accounting, Inc., is AFFIRMED.

---

[4] Because the IRS public affairs officer procured the information in the releases through her review of the indictment, attendance at Rice's trial and sentencing, and research into the possible criminal penalties, Rice similarly has no claim against the IRS under the Federal Privacy Act, which requires that the disclosed information come from a "system of records." 5 U.S.C. § 522a(b). Likewise, in the absence of tortious conduct, Rice has no claim under the Federal Torts Claim Act.

Attachments not available electronically.