IN RE SEARCH WARRANT EXECUTED ON MARCH 22, 2016 at 8303 Thora Lane, Hangar #M31 Spring, Texas 77379

In re Search Warrant executed on April 13, 2016 at 194 West Breezy Way The Woodlands, Texas 77380

In re Search Warrant executed on April 12, 2016 at Unit #C, Uncle Bob's Self-Storage 4455 Panther Creek Pines The Woodlands, Texas 77381

CR ACTION No. 4:16-MJ-409, CR ACTION No. 4:16-MJ-555, CR ACTION No. 4:16-MJ-556

United States District Court, S.D. Texas, Houston Division.

Signed July 15, 2016

Justin R. Martin, United States Attorneys Office, Houston, TX, for Plaintiff.

## MEMORANDUM AND ORDER

DENA HANOVICE PALERMO,
UNITED STATES DISTRICT JUDGE

Before the Court are Movant Justin Smith's motions to unseal three affidavits supporting the search warrants executed at his home, place of business, and storage unit in March and April of 2016. The motions were referred for disposition and/or recommendation [Dkt. 17].[1] On May 20, 2016, the Court issued a Memorandum, Recommendation, and Order ("MRO") [Dkt. 15] directing the Government to file, under seal, for the Court's *ex parte, in camera* review, redacted versions of the affidavits and a supplemental brief justifying the redactions. *In re Search Warrant Executed on Mar. 22, 2016 at 8303 Thora Lane*, No. 4:16–MJ–409, 2016 WL 3002358, at *4–5, *9 (S.D.Tex. May 20, 2016). The Government subsequently filed a motion to stay [Dkt. 16] and a motion for reconsideration and extension of time [Dkt. 19], both of which the Court denied [Dkt. 18, 21].

On June 9, 2016, the Government finally submitted *ex parte*, under seal, redacted affidavits and a supplemental brief [Dkt. 22], The proposed redactions are extensive, encompassing most of the content of each affidavit. The Government claims these sweeping redactions are necessary to

---

1. A magistrate judge's power to control access to judicial records appears to falls under the "additional duties" prong of the Federal Magistrates Act, 28 U.S.C. § 636(b)(3). *See In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 289 (4th Cir.2013).

avoid revealing (1) "return information" that the Internal Revenue Code mandates remain confidential, (2) the scope, status, and direction of the Government's investigation and its investigatory techniques, and (3) confidential sources of information and witnesses. For the following reasons, the Court rejects the first two rationales and finds that the third justifies redactions far more limited than what the Government seeks.

### A. The Internal Revenue Code's Restriction on Disclosure of "Return Information" Does Not Support the Government's Redactions.

■■■ As explained in the MRO, courts have the inherent authority to unseal judicial records and documents, including search warrant affidavits, in furtherance of the public's qualified common-law right of access. *In re Search Warrant*, 2016 WL 3002358, at *1 n. 1, *2–4. The Government argues that § 6103 of the Internal Revenue Code, 26 U.S.C. § 6103, abrogates that common-law right where, as here, the records contain "return information."

Section 6103 states that "return information shall be confidential" and that, except as otherwise authorized, "no officer or employee of the United States ... shall disclose any ... return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section." 26 U.S.C. § 6103(a); *see also Johnson v. Sawyer*, 120 F.3d 1307, 1317 (5th Cir.1997) (citing *Church of Scientology v. IRS*, 484 U.S. 9, 10, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987)). "Return information" is defined to include:

a taxpayer's identity, the nature, source, or amount of his income, payments, re-ceipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassess-ments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investi-gation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secre-tary with respect to a return or with respect to the determination of the exis-tence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposi-tion, or offense ....

26 U.S.C. § 6103(b)(2)(A); *see also Baskin v. United States*, 135 F.3d 338, 342 (5th Cir.1998) (to constitute "return informa-tion," information must have "somehow passed through, [be] directly from, or [be] generated by the IRS").

At the same time, § 6103 contains a host of exceptions permitting disclosure of re-turn information in various circumstances. *See* 26 U.S.C. § 6103(c)-(o); *Baskin*, 135 F.3d at 341 ("[t]he exceptions to this gen-eral rule of non-disclosure are legion"); *Johnson*, 120 F.3d at 1319 (the statute "enumerates 13 separate (and quite de-tailed) exceptions to § 6103, providing for disclosure to various federal and state agencies and employees for a variety of purposes"). In particular, § 6103(h)(4)(A) allows return information to be disclosed in a federal judicial proceeding "pertaining to tax administration" if the proceeding "arose out of, or in connection with" deter-mining the taxpayer's criminal tax liability. 26 U.S.C. § 6103(h)(4)(A).[2] This proceed-ing plainly meets those criteria. *See Jones v. United States*, 869 F.Supp. 747, 758 (D.Neb.1994) ("Clearly the application for

---

**2.** The provision reads:

    **(h) Disclosure to certain Federal officers and employees for purposes of tax administra-tion, etc.—**

    * * *

    **(4) Disclosure in judicial and administra-tive tax proceedings.—**A return or re-turn information may be disclosed in a

search warrants in this case was connected with a determination of plaintiffs' criminal liability in this case."); *Hobbs v. United States*, 209 F.3d 408, 410–11 (5th Cir.2000) (noting that proceedings covered by § 6103(h)(4) are defined "broadly").

This motion arises out of the Government's disclosure to this Court of return information protected under § 6103. By presenting the affidavits to the Court in support of its search warrant applications, the Government "disclosed" the return information contained in them. *See* 26 U.S.C. § 6103(b)(8) (broadly defining "disclosure" to mean "the making known to any person in any manner whatever a return or return information"). Section 6103(h)(4)(A) authorized the Government's disclosure insofar as this proceeding is concerned. *See Chamberlain v. Kurtz*, 589 F.2d 827, 838 (5th Cir.1979) (noting that without § 6103(h)(4), government officials "could not use the information as evidence" in a judicial proceeding). Once return information is properly disclosed to the Court, the Court may permit access to that information as necessary in the course of the relevant proceedings. *See Johnson v. Sawyer*, 120 F.3d 1307, 1321 (5th Cir.1997) (noting that "when Congress drafted § 6103, it considered the possibility that some tax return information might be oth-

erwise available to the public—*e.g.*, in court records, because it had been disclosed in a judicial proceeding"); *Thomas v. United States*, 890 F.2d 18, 20 (7th Cir.1989) (Posner. J.) (noting that "[t]he disclosure of return information by the judges of the Tax Court in their opinion was authorized by the same statutory provision that authorized the IRS to disclose it in the Tax Court proceeding, § 6103(h)(4)"). Because court proceedings are presumptively public, *see generally In re Sealing & Non–Disclosure of Pen/Trap/ 2703(d) Orders*, 562 F.Supp.2d 876, 887–94 (S.D.Tex.2008), the Government, by filing the affidavits in this proceeding, effectively recognized that the public could eventually access the return information in them.

The fact that the Government submitted motions to seal alongside the affidavits does not alter this analysis. The Court sealed the warrants, affidavits, and other documents exercising its inherent authority. *See In re Search Warrant*, 2016 WL 3002358, at *1 n. 1. The Government requested that the affidavits be sealed due to an ongoing investigation and to prevent others from learning of the warrants through premature disclosure, implying that the sealing was necessary until the search warrants could be served. [*See* Dkt. 1 at ¶ 48; Dkt. 2.] The Government did not

Federal or State judicial or administrative proceeding pertaining to tax administration, but only—

**(A)** if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;

* * *

However, such return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

26 U.S.C. § 6103(h)(4)(A).

The Court's MRO directed the Government to address this exception in its supplemental brief. *In re Search Warrant*, 2016 WL 3002358, at *5 & n. 8 ("To the extent the Government claims that portions of the affidavits require redaction because they contain 'return information' under the Internal Revenue Code, its brief must also explain why the disclosure provisions contained at 26 U.S.C. § 6103(c), (e), and/or (h) do not support providing Smith with access to that information." (footnotes omitted)). The Government did not do so.

move to seal the affidavits because they contain return information, and the Court did not order sealing on that basis. Nor has the Government ever claimed that § 6103 *required* the Court to seal the affidavits. And with good reason. Section 6103(h)(4)(A) explicitly permits disclosure of return information in this proceeding.[3] The Court declines to hold that § 6103 now requires the affidavits remain under seal. As one court has aptly observed:

> For the government to now advance the proposition that the magistrate, or any judicial officer, has no authority to order the documents he has sealed, unsealed, is untenable. The power to unseal is concomitant to the authority to seal. If this were not so, granting a motion to seal would be an irrevocable act.

*In re Search of a Residence at 14905 Franklin Drive*, 121 F.R.D. 78, 79 (E.D.Wis.1988), *quoted in In re Search Warrant*, 2016 WL 3002358, at *1 n. 1.

█ The Government's reading would allow it to use the statute as both a sword and a shield: § 6103(h)(4)(A) as a sword to obtain search warrants based on the Government's disclosure of return information

in a judicial proceeding, and § 6103's general policy of non-disclosure as a shield to preclude subsequent access to that same return information in the same proceeding. There is no basis for such an incongruous reading. *See Beresford v. United States*, 123 F.R.D. 232, 233 (E.D.Mich.1988) (noting that "it is apparent that Congress enacted the statute as a shield to protect taxpayers from improper disclosure by the government of the information they were required to provide to it by law," not as a "sword to avoid telling the taxpayer seeking a refund the information utilized in determining the tax"). Section 6103, after all, "was enacted to **protect taxpayers from the IRS, not the IRS from taxpayers**."[4] *In re United States*, 817 F.3d 953, 965 (6th Cir.2016) (emphasis added); *see also McSurely v. McAdams*, 502 F.Supp. 52, 56 (D.D.C.1980) ("the overriding purpose of the confidentiality provisions of § 6103 was to protect tax returns and return information from misuse by the White House, various Executive Branch agencies and other government entities"); *Baskin*, 135 F.3d at 340 (outlining § 6103's history).[5] When Congress enacted the present version of § 6103 as part of the

---

**3.** The statute does provide that "return information shall not be disclosed ... if the Secretary [of the Treasury, *see* 26 U.S.C. § 7701 (a)(11)(B)] determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation." 26 U.S.C. § 6103(h)(4) (emphasis added). The Government does not assert that the Secretary ever made such a determination, which would have precluded the Government from presenting the affidavits in this proceeding in the first place.

**4.** This is not a case where a taxpayer has initiated a judicial proceeding and then invokes § 6103(h)(4) to obtain full access to the Government's investigative file. *See Chamberlain*, 589 F.2d at 835–38. Here, the taxpayer is asking solely for the affidavits supporting the applications for three warrants issued to search his home, office, and storage unit.

**5.** In *Baskin*, the Fifth Circuit summarized § 6103's history as follows:

> The Internal Revenue Service is a unique government organization which has, in the fulfillment of its statutory function, assembled information pertaining to virtually every citizen in the United States. Prior to 1976, the material gathered and recorded by the IRS was readily available to other agencies of the government pursuant to rather lax disclosure polices. In fact, the IRS was accused of having becoming a virtual " 'lending library' " for the government. The use of this information in the mid-1970's by other governmental agencies had reached such a prodigious level that Congress be came concerned with the possible use of the IRS as a political tool. In 1976, in response to these perceived abuses and in order to significantly tighten the restrictions pertaining to the use of in-

Tax Reform Act of 1976, *see Baskin*, 135 F.3d at 340, the Government rarely sought to execute and seal search warrants in cases like this. *In re Search Warrants Issued on Apr. 26, 2004*, 353 F.Supp.2d 584, 589 (D.Md.2004) (citing David Horan, *Breaking the Seal on White-Collar Criminal Search Warrant Materials*, 28 PEPP. L. REV. 317, 320 (2001)) ("The government's practice of routinely seeking to execute and seal search warrants is a recent phenomenon."). Though the Government's search warrant practices have changed, *see id.*, the Court cannot judicially amend the statutory framework Congress has put in place.

*Johnson v. Sawyer* supports this result. There, a taxpayer sued the IRS for wrongfully disclosing tax return information in two press releases following the taxpayer's conviction for income tax evasion. 120 F.3d at 1309–14. In its opinion, the Fifth Circuit adopted the following rule: "[i]f the immediate source of the information claimed to be wrongfully disclosed is tax return information ('return' or 'return information' pursuant to § 6103), the disclosure violates § 6103, *regardless* of whether that information has been previously disclosed (lawfully) in a judicial proceeding and has therefore arguably lost its taxpayer 'confidentiality.'" *Id.* at 1318–19 (emphasis in original). *Johnson* acknowledged that return information can be lawfully disclosed in a judicial proceeding, *see id.* thus confirming this Court's application of

> formation collected by the IRS by other government agencies, Congress enacted a general prohibition against the disclosure of information complied by the IRS.
> 135 F.3d at 340 (internal citations omitted).

**6.** The Government takes issue with the fact that the *Baltimore Sun* test's phrasing is partly based on caselaw involving the First Amendment right of access. (Mot. for Reconsideration at 4-5.) It argues that the Fifth Circuit's decision in *SEC v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir.1993), requires

§ 6103(h)(4)(A) here. *Accord Thomas*, 890 F.2d at 20.

■ Because court proceedings fall under a statutory exception, § 6103 does not prevent unsealing those portions of the affidavits containing return information. Since the Court has the inherent power to seal and unseal information in court proceedings, the Government's position that § 6103 requires that the affidavits remain sealed and/or heavily redacted is without merit.

## B. Investigatory Considerations Do Not Support the Government's Redactions.

■■ The Government next contends that heavy redactions are necessary to avoid revealing the scope, status, and direction of the Government's investigation and its investigatory techniques. As this Court previously held, to justify continued sealing of the affidavits in light of the public's qualified common-law right of access, the Government must demonstrate that secrecy is "'essential to preserve higher values and is narrowly tailored to serve that interest.'" *In re Search Warrant*, 2016 WL 3002358, at *3 (quoting *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65–66 (4th Cir.1989)). "'[C]onclusory assertions are insufficient.'" *Id.* at *3 (quoting *Baltimore Sun*, 886 F.2d at 66).[6]

The Government's investigatory concerns, as it has articulated them, do not

only that the Court "balance the public's common law right of access against the interests favoring nondisclosure." *Id.* at 848. The Court does not see any inherent inconsistency between *Baltimore Sun* and *Van Waeyenberghe*. *Baltimore Sun* merely contains a more detailed expression of how courts should go about balancing the relevant competing interests. Moreover, even if the Court were to apply *Van Waeyenberghe's* formulation, it would come to the same conclusions regarding the insufficiency of the Government's justifications for its proposed redactions.

meet this showing. First, the Government fails to identify what its strategy is that disclosure would reveal. Instead, the Government's supplemental brief merely contains three tables identifying which affidavit paragraphs it believes should be redacted because disclosure would reveal its investigative strategy. There is no explanation tying specific facts about this particular investigation to any concrete investigational harms that might result from unsealing. The Government's motion for reconsideration likewise states that "in all cases," disclosure of search warrant affidavits would "give the subject of the investigation the opportunity to conceal, destroy, alter, or fabricate evidence." (Mot. for Reconsideration at 10.) This amounts to "nothing more than [a] conclusory allegation[ ] which would require the [continued] sealing of search warrants in nearly every criminal investigation." *In re Up North Plastics, Inc.*, 940 F.Supp. 229, 234 (D.Minn.1996); *see also In re Search Warrant for Second Floor Bedroom*, 489 F.Supp. 207, 212 (D.R.I.1980) (the "mere possibility of harm" is not sufficient to maintain a search warrant affidavit under seal).

The Government's best case for its redactions lies in its claim that Smith "has attempted to conceal and destroy the very evidence that was sought by the search warrants he now wants to unseal" and that if he were to obtain access to the search warrant affidavits, he would be "given a roadmap to further obstruct" the investigation. (Mot. for Reconsideration at 10.) Smith firmly denies this allegation, stating that the Government has "falsely represented ... [that] this evidence was on video tape ... [and] has now admitted that there was never evidence that Smith de-stroyed or attempted to destroy documents, and has conceded that there is no video-recorded proof of this bogus claim." (Resp. Opp. Mot. for Reconsideration at 4, 6.) The Government's claim may have had some force at an earlier point in this proceeding. But the search warrants have now been executed, the Government has seized large amounts of evidence from Smith's home, place of business, and storage unit in furtherance of its tax fraud investigation, and more than three months have passed. Smith, his employees, and his customers are aware of the Government's investigation. At this point, it is unclear how unsealing the affidavits would enable Smith to interfere with the ongoing tax fraud investigation. The Government has certainly failed to demonstrate that it would. The Government has failed to even suggest, let alone show, that other information exists that the Government has yet to collect that would be destroyed. Furthermore, in its motion to seal the affidavits, the Government suggested that sealing was necessary because other targets would be tipped-off. Otherwise, the Government has provided nothing to suggest that there are other targets, that this investigation is tied into a larger investigation, or that undercover informants would be endangered if this information were disclosed. *See In re Search Warrants Issued Aug. 29, 1994*, 889 F.Supp. 296, 299–300 (S.D.Ohio 1995) (granting motion to unseal search warrant materials and noting that investigation "was not a part of some broader investigation" and that "there are no informants whose lives would be endangered"). The Court therefore rejects the Government's argument that disclosure would reveal its investigative strategy.[7]

---

7. The Government cites numerous cases where courts have denied motions to unseal. (Supp. Br. at 6-7 & n.5.) As the Court stated in the MRO, "[w]hether unsealing an affidavit will unduly interfere with an ongoing investigation necessarily depends on the content of that particular affidavit, the precise nature of that investigation, and other case-specific fac-

## C. Concerns Regarding Confidential Sources of Information and Witnesses Justify Limited, Not Wholesale, Redactions.

■ The Government maintains that various redactions are necessary to avoid revealing confidential sources of information and witnesses. As it explains:

> The government has a strong interest in preventing public disclosure of its witnesses and confidential sources of information. Law enforcement personnel use details provided by cooperating witnesses, confidential informants, undercover agents, and other sources of information, to obtain evidence and evaluate the accuracy and credibility of witnesses. This function would be seriously undermined if the information in the affidavits were made public. Identifying information about confidential sources creates a significant chilling effect on the government's ongoing investigation. ... There is also the practical threat that a potential witness will be discouraged from providing further cooperation or information due to fear of publicity or harassment by the media.

(Mot. for Reconsideration at 9-10.)

The Government's argument is overbroad insofar as it suggests that these concerns would justify keeping documents under seal "[i]n every case." (*Id.* at 10.) *See In re Search of 14416 Coral Gables Way,* 946 F.Supp.2d 414, 421 (D.Md.2011) (rejecting government's request that affidavit remain under seal based on potential for witness and evidence tampering because such a "general concern ... could justify the sealing of affidavits in every criminal investigation"); *In re Wag–Aero, Inc.,* 796 F.Supp. 394, 395 (E.D.Wis.1992)

(finding government's assertion that disclosure would enable target to obstruct investigation and might threaten safety of an unnamed witness insufficient to justify continued sealing). Moreover, the redactions the Government seeks here are excessive. However, having fully and carefully examined the affidavits, the Court finds it appropriate to redact specific details, such as personal initials, dates, invoice amounts, and certain narratives, that would readily identify witnesses and confidential sources of information. These "narrowly tailored" redactions will ensure a proper balance between the public's right of access and the need to maintain an appropriate level of confidentiality for the individuals concerned. *See In re Search Warrant,* 2016 WL 3002358, at *3 (citing *Baltimore Sun,* 886 F.2d at 65–66); *In re Searches of Semtex Indus. Corp.,* 876 F.Supp. 426, 429 (E.D.N.Y.1995) (observing that courts should consider alternatives to sealing, "such as partial disclosure of documents or disclosure of redacted versions," and providing for unsealing of warrant documents "except as to information regarding undercover agents or cooperators"); *cf. In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569, 574 (8th Cir.1988) (finding "line-by-line" redactions of sealed documents "not practical" where "[v]irtually every page contain[ed] multiple references" to sensitive information).

## CONCLUSION

Therefore, the Court **ORDERS** that the search warrant affidavits be unsealed, subject to the redactions contained in Attachments 1, 2, and 3, which the Court is filing concurrently with this order. These redact-

---

tors." *In re Search Warrant,* 2016 WL 3002358, at *4 (citing *Nixon v. Warner Commc'ns Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (trial court discretion over access should "be exercised in

light of the relevant facts and circumstances of the particular case")). None of the cases the Government cites is sufficiently analogous to this case to support the proposed redactions.

ed Attachments will remain under seal for fourteen days to reflect the Court's prior order stating that "the affidavits will not be unsealed until the Government has had an opportunity to object." (Order Denying Mot. to Stay at 2 [Dkt. 18].) *See* 28 U.S.C. § 636(b)(1) (providing fourteen days for a party to file written objections). If the Government does not object, the redacted Attachments will then be unsealed and become part of the public record in this proceeding. If the Government objects to this opinion, then the redacted Attachments will remain under seal pending the district court's ruling.