United States Court of Appeals,

Eleventh Circuit.

No. 94-4214.

James P. RYAN, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Feb. 14, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 90-6083-CIV-NCR), Norman C. Roettger, Jr., Chief Judge.

Before COX, Circuit Judge, DYER, Senior Circuit Judge, and GOETTEL[*], Senior District Judge.

GOETTEL, Senior District Judge:

This appeal from a civil action grows out of a criminal prosecution. Plaintiff, James P. Ryan, was a prominent criminal defense lawyer in Florida. He was indicted for, *inter alia,* a conspiracy to import and distribute marijuana and conspiracy to defraud the Internal Revenue Service ("IRS") in the ascertainment of taxes of other persons. He was convicted on two of the three counts pending against him and sentenced to a period of imprisonment which he served. (A first trial ended in an early mistrial).

One of the conviction counts (the third) charged that in connection with a large scale marijuana distribution ring involving co-conspirators Dennis McGuire, Bying Goode and Patrick Bilton, he conspired with them to launder their marijuana proceeds and to conceal it from the Internal Revenue Service and other

---

[*]Honorable Gerard L. Goettel, Senior U.S. District Judge for the Southern District of New York, sitting by designation.

investigative agencies by filing fabricated law suits to account for the proceeds.  In addition he was charged with providing "legal insurance" where, for the sum of $10,000 per participant, paid in advance, he would represent them if criminal proceedings were instituted against them.

Ryan's civil claims concern the purported illegal release of information on two occasions which he claims is "return information" within the definition of 26 U.S.C. § 6103(b) of the Internal Revenue Code.  He attributes this to the prosecutor in his criminal case.

The first purported improper release of information concerned a bar room conversation between the prosecutor and a female friend of Ryan's, in which the prosecutor purportedly made reference to Ryan's high living standard as being contrary to the limited income revealed on his tax returns.  The prosecutor's recollection of the discussion was entirely different from Ryan's friend's recollection, and the prosecutor could not recall having discussed Ryan's taxes.  Ryan's friend did not testify at trial but her deposition was read.  The trial judge, finding distinct credibility issues, did not resolve this factual dispute, but held there had been no improper release of return information.

The more significant claim concerned memoranda summarizing witness statements made to the prosecution both in interviews and before the grand jury.  Virtually all of this information had been made public at Ryan's criminal trial.  (However, the statements of one confidential informant, who did not testify at trial, concerning Ryan investing in a marijuana load, were included).  The

prosecution memoranda was in the possession of a reporter who gave it to his editor, a friend of Ryan's, who then turned it over to Ryan. After Ryan's conviction, a motion was made for a new trial citing the prosecution memoranda and claiming prosecutorial misconduct. This argument was rejected both in the district court and on appeal. On the day following the denial of a new trial, this civil action was filed against the United States, claiming the unauthorized disclosure of tax information. While Ryan acknowledged that he had no compensatory damages, he sought statutory damages of $2,000 and punitive damages of $100,000—although punitive damages are usually not available in a suit against the government, the statute prohibiting release of return information is an exception. 26 U.S.C. § 7431. Ryan offered to drop this suit if the prosecution would ask the Parole Board to reduce his sentence.

During the bench trial of this case, the reporter and editor claimed newsgatherer's privilege and declined to reveal the source of the memoranda. The prosecutor testified that he had no specific recollection of giving the memoranda to the reporter. While the trial court noted, therefore, that there was no evidence that the prosecutor *had* released the memoranda, it found the prosecutor's loss of memory disturbing. Consequently, the court did not rest its decision for the government on the lack of proof of disclosure but found, rather, that the contents of the memoranda were the prosecution's work product distilled from statements of trial witnesses and, consequently, were not "return information" acquired from the IRS. This is a factual finding which cannot be reversed

since it was not clearly erroneous.  *Childrey v. Bennett,* 997 F.2d 830, 833 (11th Cir.1993).

The district court relied on *Stokwitz v. United States,* 831 F.2d 893 (9th Cir.1987), *cert. denied,* 485 U.S. 1033, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988).  In that case Navy employees had searched the plaintiff's office and seized his copies of his own federal tax returns, the originals of which had been filed with the IRS.  These documents were then disclosed to various Navy employees.  The plaintiff, a civilian attorney employed by the Navy, sought damages for wrongful disclosure of his tax returns. The district court and the Ninth Circuit held that the statutory protection is directed at government employees (such as those of the IRS) who obtain tax returns and return information as a result of these materials being filed by or on behalf of the taxpayer with the IRS, since the purpose of the statute was to control loose disclosure practices by the IRS.  *Id.* at 894.[1]

The statute, 26 U.S.C. § 6103(b)(2)(A), is quite broad but it is restricted to data:

> ... received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense ...

Consequently the statutory definition of "return information" confines it to information that has passed through the IRS.[2]

---

[1]*See* S.Rep. No. 938, 94th Cong.2d Sess. 316-318.

[2]Plaintiff argues that we should also look at the next paragraph of the section, 6103(b)(3), but that section merely incorporates (b)(2) for the definition of "taxpayer return information."

Attorney's memoranda, which are work product distilled from statements of trial witnesses, are not such materials.[3] Moreover, the information disseminated in the prosecution memoranda did not concern, or derive from, Ryan's tax returns but concerned, *inter alia,* the tax status of other persons.[4]

The government frames the question presented as whether financial information obtained by a federal prosecutor independently of the IRS constitutes "return information." Ryan argues that, if the IRS is involved in a prosecution (and it was here along with the Drug Enforcement Agency), and his tax returns were made available to the United States Attorney's Office (as they were), this makes the prosecution memorandum data received and collected "by the Secretary" with respect to the tax liability of "any person"—*i.e.* the other persons whose tax returns were involved in the conspiracy to defraud the IRS.

Initially we note that "return information" requires a nexus between the data or information obtained and the furtherance of

---

[3]As a simple example, tax returns may include the names of companies in which the taxpayer has ownership interests. If a prosecutor learns of a business relationship from witnesses, the fact that this information also appears in a tax return does not make the prosecutor's knowledge "return information."

[4]There were three memoranda. The first, dated May 20, 1988, recommended prosecuting Ryan (for the violations that were subsequently alleged in the indictment) and detailed at length the activities of the co-conspirators in concealing and laundering their marijuana importing profits as well as the arrangement for "legal insurance". It also described some of the marijuana smuggling operations including Ryan's personal investments of $15,000 in one venture. A second memorandum, dated June 28, 1988, added testimony of two additional witnesses. The final memorandum, dated July 29, 1988, reviews the evidence available for a conviction without the testimony of Dennis McGuire who Ryan's defense counsel had claimed had contrived his version of the events to get revenge against Ryan.

obligations controlled by the tax laws ( *i.e.* Title 26). *In Re Grand Jury Investigation,* 688 F.2d 1068, 1070 (6th Cir.), *reh'g denied,* 696 F.2d 449 (6th Cir.1982). While there were tax aspects to the investigation of Ryan, the conspiracies of which he was convicted (importing marijuana and defrauding the IRS), violate Titles 18 and 21 of the United States Code. Section 6103 of Title 26 protects only information filed with and disclosed by the IRS, not all information relating to any tax matter. *Stokwitz, supra,* 831 F.2d at 897.

More to the point, information collected by the United States Attorney's Office, even with the assistance of an IRS Special Agent, is not information belonging to the Secretary of the Treasury—it is within the custody of the Attorney General or the Department of Justice. Finally, even if the information were considered to belong to the Treasury, and to concern the tax liability of persons, those were persons other than Ryan (*i.e.* the three aforementioned co-conspirators) and he lacks standing to object to its dissemination. *In re Grand Jury Investigation, supra,* 688 F.2d at 1070-71; *see also Mid-South Music Corp. v. United States,* 818 F.2d 536, 539 (6th Cir.1987).

The decision of the district court is in all respects AFFIRMED.