**JADE TRADING, LLC, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 03–2164T.

United States Court of Federal Claims.

May 11, 2004.

David D. Aughtry, Chamberlain, Hrdlicka, White, Williams & Martin, Atlanta, Georgia, and Linda S. Paine, Houston, Texas, for Plaintiffs.

George L. Squires, U.S. Department of Justice, Tax Division, Washington, D.C. for Defendant. Eileen J. O'Connor, Mildred L. Seidman, David Gustafson, William K. Drew,

and Matthew C. Hicks, U.S. Department of Justice, Tax Division, Of Counsel.

### ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR RULE 56(f) RELIEF

WILLIAMS, Judge.

In this action, Plaintiffs Jade Trading, LLC and the partners therein seek a readjustment of the partnership items on their partnership return for 1999 under Section 6226 of the Internal Revenue Code and recovery of $4,110,812.00 in taxes Plaintiffs deposited with the IRS pursuant to 26 U.S.C. § 6226(e).

On January 5, 2004, prior to the filing of the Joint Preliminary Status Report or the conduct of any discovery, Plaintiffs filed three motions for partial summary judgment, asking that the Court:

(1) declare Treasury Regulation § 1.701–2, invalid,

(2) recognize Jade Trading, LLC as a partnership under 26 U.S.C. § 761 and reject the unexplained contention in the IRS' Final Partnership Administrative Adjustment that Jade Trading is a sham.

(3) hold that the two transactions at issue involving purchased and sold call Eurodollar options constitute Section 988 Transactions that cannot be offset.

Plaintiffs contend that favorable rulings by the Court on these three motions will dispose of this entire case.

This matter comes before the Court on Defendant's motion under Rule 56(f) of the Rules of the Court of Federal Claims (RCFC), seeking that the Court refuse Plaintiffs' motions for partial summary judgment or, in the alternative, continue proceedings on the motions until after the completion of discovery.[1] Because Plaintiffs' first motion for partial summary judgment is not ripe for determination in that it raises a significant legal issue which the Court may not need to reach to resolve this matter, the Court denies that motion without prejudice. The other two motions for partial summary judgment clearly implicate genuine issues of material fact so the Court grants Defendant's Rule 56(f) motion and refuses Plaintiffs' motions for summary judgment at this juncture. However, it is apparent to the Court that forcing Defendant to engage in truncated discovery solely to enable it to oppose Plaintiffs' motions would be a wasteful exercise in piecemeal litigation and could engender extraneous disputes as to the scope of discovery "essential" for Defendant to respond to Plaintiffs' motions. Thus, the Court invokes Rule 56(f)'s authorization "to make such other order as is just" and authorizes full-blown discovery in a mode and manner to be determined after further consultation with the parties.

### *Background* [2]

### *Jade Trading*

On September 12, 2003, Plaintiffs commenced this action seeking a readjustment of the partnership items of Jade Trading for tax year 1999. Jade Trading is organized as a Delaware limited-liability company, but treated as a partnership for federal tax law purposes. Ervin Capital, LLC, is a member and notice partner of Jade Trading,[3] and Robert W. Ervin, the sole member of Ervin Capital, and Laura Kavanaugh Ervin, the wife of Robert W. Ervin, are indirect partners of Jade Trading.

Plaintiff Robert Ervin and his two brothers, Gary and Tim (neither of whom is a named party to this action), sold their businesses in 1999 for a substantial amount of

---

1. RCFC6(f) provides:
   Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

2. The background is derived from the allegations in the Complaint.

3. Section 6231(a)(8) of the Internal Revenue Code of 1986, as amended, defines a notice partner as, "a partner who, at the time in question, would be entitled to notice under subsection (a) of section 6223 ...." 26 U.S.C. § 6231(a)(8).

cash and stock. Seeking to invest and diversify their holdings, the brothers decided to work with a hedge fund, Sentinel Advisors, LLC (Sentinel), on a venture into the Euro currency market. To reduce personal liability, Robert Ervin created Ervin Capital, LLC, a limited-liability company in which he was the only member. Gary and Tim created their own single-member limited liability companies, Ervin Holdings, LLC and Ervin Investments, LLC, respectively. Sentinel, already a member of Jade Trading, was to serve as its managing member and the tax matters partner.

Plaintiffs allege that Jade Trading was a bona fide partnership, formed for the express purpose of making money from trading, and not with a principal purpose of reducing substantially the partners' aggregate federal tax liability. Plaintiffs cite various business transactions Jade Trading entered into in its own name:

> During 1999, Jade (i) entered into enforceable binding option contracts in its own name as a party; (ii) maintained trading accounts in its own name at Salomon Smith Barney; (iii) acquired foreign currency positions in its own name; (iv) bought foreign currency positions in its own name; (v) sold foreign currency positions in its own name; (vi) acquired equities in its own name; and (vii) conducted business as a functioning, existing limited liability company.

Complaint ¶ 15(bf). In addition, Jade Trading allegedly made all filings required by law, had a separate bank account in its name, traded and otherwise did business with unrelated parties and conducted itself as a business entity, distinct from its partners.

### The Transactions

On September 29, 1999, Ervin Capital paid $15,000,020 to AIG International to purchase a Euro/U.S. Dollar call option (the Purchased Call Option).[4] The Purchased Call Option had a strike price of 1.084, and allowed Ervin Capital to purchase EUR 290,540,000 for U.S. $314,945,360 before the expiration date of September 29, 2000. Also on September

29, 1999, Ervin Capital sold a Euro/U.S. call option (the Sold Call Option) for $14,850,018 to AIG International. Under the Sold Call Option, with a strike price of 1.085, AIG International could buy EUR 290,540,000 for U.S. $315,235,900 on or before September 29, 2000. According to Plaintiffs, the Sold Call Option, as a contingent liability, would attach liability to Ervin Capital only if it was exercised by AIG International, and AIG International never exercised its purchase rights under the Sold Call Option. On October 6, 1999, Ervin Capital transferred its Purchased Call Option, Sold Call Option, and $75,000 to Jade Trading in exchange for a 30.7% interest in Jade Trading.

Soon after Jade Trading was formed, it began taking long positions in the Euro, but the new currency fell below the U.S. dollar on December 3, 1999. A few days later, Ervin Capital, Ervin Holdings, and Ervin Investments gave notice of their intents to withdraw from Jade Trading, received a portion of the partnership's holdings in foreign currency and Xerox stock, and terminated their partnership interests. In 2000, Jade Trading continued trading for its remaining partners, but at a reduced volume.

### Jade Trading's 1999 Tax Return and the IRS' Adjustments

In its 1999 partnership tax return, Jade Trading reported net losses and deductions of $292,015. The IRS, in the Final Partnership Administrative Adjustment (FPAA), dated April 15, 2003, adjusted Jade Trading's taxes for 1999 by adding $314,416 to gross income, resulting in positive net income of $22,401 for the year.

The FPAA also imposed a 40–percent tax penalty due to an alleged gross valuation misstatement of the partners' basis in their partnership interest, and alternatively, assessed three penalties of 20 percent due to: (1) "negligence or disregard" of federal tax law; (2) a "substantial understatement of income tax;" and (3) a "substantial understatement of income tax because the transaction is a tax shelter, no substantial authority has been established for the position taken,

---

4. Plaintiffs represent that AIG International is a wholly owned subsidiary of the worldwide insur-

ance conglomerate AIG and an unrelated third-party.

and there was no reasonable belief upon the filing of the return that the position taken was more likely than not the correct treatment of the transaction." Complaint, Ex. A at 8–9. The FPAA set forth five reasons for the adjustments made:

(1) Because Jade Trading is a sham partnership and, pursuant to Treasury Regulation § 1.701–2, was formed for the principal purpose of tax evasion, the partnership form is discarded and all partnership transactions are attributed directly to the individual partners.

(2) The Euro currency options are deemed not to have been contributed to the partnership, and gains or losses on those options are to be realized by Ervin Capital, Ervin Holdings, and Ervin Investments.

(3) Ervin Capital, Ervin Holdings, and Ervin Investments are not deemed to be partners in Jade Trading.

(4) Accordingly, all partnership contributions are to be adjusted to accurately reflect the income of the partnership or of the partners.

(5) In the event that the Euro currency options are deemed contributed to the partnership, the bases of the options, with respect to the partnership and contributing partners, are to be reduced by the amount received by the contributing partner from the contemporaneous sale of a substantially similar option to the same counter-party.

Complaint, Ex. A at 8.

Plaintiffs allege that Defendant has already pursued extensive pre-litigation discovery in this case for almost a year, obtained some 9,602 pages of documents and "effectively deposed all the witnesses it thought were important to its case in preparing and issuing the April 15, 2003, FPAA."[5] Pls.' Resp. of Jan. 26, 2004 at 16. Therefore, Plaintiffs argue that additional discovery by Defendant in this action is unnecessary.

5. Specifically, Plaintiffs claim that the IRS interviewed Robert Ervin, Tim Ervin, and Gary Ervin at length on April 9, 2003, and essentially de-

### Discussion

The Court has jurisdiction over a readjustment of partnership items pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b).

### Plaintiffs' First Motion for Partial Summary Judgment

■ Defendant does not seek discovery with respect to Plaintiffs' first motion for partial summary judgment, in which Plaintiffs ask the Court to invalidate in its entirety Treasury Regulation § 1.701–2, a regulation which has been in effect for almost 10 years. Defendant persuasively argues that this motion is not ripe for resolution since, at this early stage of the proceedings, the issues which will drive the resolution of this case have not yet been determined.

The Court's review extends to all Jade Trading's partnership items for the 1999 tax year, and is not limited to a review of adjustments made by the FPAA. 26 U.S.C. § 6226(f). Defendant has not yet decided whether it ultimately will rely on Treasury Regulation § 1.701–2, suggesting that it may base its defense on judicial doctrines such as the sham transaction doctrine, the economic substance doctrine, the substance-over-form doctrine, and the step transaction doctrine. Defendant characterizes these doctrines as follows:

The *sham transaction doctrine* applies both when a purported activity giving rise to claimed tax benefits does not in fact occur ... also when a factually actual transaction is entered into to generate a loss for the taxpayer, and the taxpayer's risk with respect to the transaction has been eliminated through a guarantee by a broker, the transaction may be found to be a sham ...

Under the *economic substance doctrine,* courts generally will deny claimed tax benefits if the transaction, which actually occurred and which gives rise to the claimed tax benefits, lacks economic substance independent of tax considerations. The doctrine suggests a balancing of risks and profit potential as compared to the tax

posed Ari Bergmann of Sentinel in October of 2003.

benefits in order to determine whether the transactions had "purpose, substance or utility apart from their anticipated tax consequences." . . . The seminal case involving this doctrine was *Gregory v. Helvering*, 293 U.S. 465[, 55 S.Ct. 266, 79 L.Ed. 596] (1935).

The principle underlying the *substance over form doctrine* is that the tax results of an arrangement are better determined when based on the substance rather than the formal steps by which the arrangement was undertaken . . .

The *step transaction doctrine*, an extension of the substance over form doctrine, "treats a series of steps as a single transaction if such steps are in substance integrated, interdependent, and focused toward a particular result . . . ."

Def.'s Reply of Feb. 6, 2004 at 2, n. 1 (citations omitted). Should the Government base its defense on one or more such judicial doctrines, the Court may avoid the issue of the validity of Treasury Regulation § 1.701–2. *Cf. Holdeen v. United States*, 186 F.Supp. 76, 77 (S.D.N.Y.1960) (in taxpayer refund suit challenging the allegedly wrongful inclusion of trust income to calculate taxpayers' personal income tax liability, court stated there was no need to reach the Government's alternative legal ground for justifying the inclusion, since triable issues existed as to the primary justification); *United States ex rel. Greenville Equip. Co. v. United States Cas. Co.*, 180 F.Supp. 715, 717 (D.Del.1960) ("In short, a resolution of the legal questions raised by the motion will not perceptibly shorten the trial. On the other hand, a determination at trial of the fact issues may eliminate the need for deciding the legal questions which defendant's motion raises. In these circumstances it is particularly appropriate that the Court, in the exercise of its discretion, deny the motion without prejudice." (citation omitted)). Because further development of the record may eliminate the need to address the claimed invalidity of a regulation, the Court denies Plaintiffs' first motion for partial summary judgment without prejudice.

### Plaintiffs' Second Motion for Partial Summary Judgment

In their second motion for partial summary judgment, Plaintiffs seek a determination that Jade Trading is a partnership, as defined under 26 U.S.C. § 761, and not a "sham" as alleged in the April 15, 2003, FPAA. Citing to the recent decision by the United States Court of Appeals for the District of Columbia in *Andantech L.L.C. v. Commissioner*, 331 F.3d 972, 978 (D.C.Cir. 2003), Defendant contends that "the determination of whether a partnership is recognized for substantive tax law purposes is made considering all facts relevant to the intent of the partners." Def.'s Rule 56(f) Mot. of Jan. 9, 2004 at 17; *Andantech*, 331 F.3d at 978 ("We [have] stated . . . that the basic inquiry in which we engage when determining whether a partnership is valid for tax purposes is whether, all facts considered, the parties intended to join together as partners to conduct business activity for a purpose other than tax avoidance.").

Defendant contends that Plaintiffs' activities constitute an abusive tax shelter known as a Son of BOSS shelter, citing IRS Notice 2000–44, 2000–2 C.B. 255, 2000 WL 1138430. Specifically, Defendant alleges that a Son of BOSS arrangement operates as follows:

In one variant of this transaction, a taxpayer purchases a call option and simultaneously writes a similar offsetting call option. The offsetting option positions are then transferred to a partnership. Under the position advanced by promoters of this arrangement, the taxpayer purports to have a positive basis in the partnership interest equal to the cost of the purchased call options, even though the taxpayer's net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. This is because they claim that the taxpayer's basis in the partnership interest is not reduced for the partnership's assumption of the taxpayer's obligation with respect to the written call options. This artificially high tax basis in the partnership is then used to claim deductible losses (that can be used to shelter other income) by immediately selling the taxpayer's partnership in-

terest, even though the taxpayer has incurred no corresponding economic loss.

Def.'s Rule 56(f) Mot. at 7, n. 6. According to Defendant, this type of tax shelter is generally marketed towards individuals who can claim high capital gains in a tax year, which are then offset with the losses stemming from the tax shelter.

In support of its Rule 56(f) motion, Defendant submits the declaration of its counsel, William K. Drew, January 8, 2004, (Drew Decl.) which sets forth the discovery Defendant requires in order to respond to this motion:

> [D]efendant needs to conduct substantial formal discovery regarding objective facts with respect to the offering of the Jade Trading scheme to plaintiffs and to other persons and entities that purportedly became members of Jade Trading and with respect to the purported activities of Jade Trading and of its alleged members. Defendant needs to determine what transactions, if any, actually occurred, what the intent of the parties to the transactions were, whether any business purpose for the transactions existed, and whether any profit motive existed for the transactions other than attempting to shelter capital gains through the generation of artificial losses. Depending upon the results of initial discovery efforts, once allowed, defendant may identify further matters requiring discovery. Also, based upon experience with litigation involving transactions designed to shelter gains, it may be necessary to have one or more experts in financial and economic matters review materials developed during discovery and prepare opinions with respect thereto. The Department of Justice has received copies of documents from the IRS with respect to Jade Trading. The defendant, however, still needs to conduct discovery in order to explore all facts and circumstances with respect to the involved transactions. The material facts and circumstances to be discovered likely will be similar in nature to the facts presented and relied upon in *ASA Investerings*, which involved the use of a partnership in an attempt to shelter gains with artificial losses.

Drew Decl., ¶ 15. In *ASA Investerings P'ship v. Commissioner*, 201 F.3d 505 (D.C.Cir.2000), the D.C. Circuit affirmed the Tax Court's decision that a partnership was neither a bona fide partnership nor a real tax entity, and upheld the IRS' adjustment of the partnership's taxes, which reallocated the partnership's capital gains to a partner, thereby canceling out the tax losses that the partner would otherwise have enjoyed. The court noted that whether the sham were "in the entity or the transaction," the critical inquiry was whether the partnership had a nontax business motive. *ASA Investerings*, 201 F.3d at 512.

Plaintiffs contend that the United States Court of Appeals for the Federal Circuit's decision in *Transpac Drilling Venture v. United States*, 83 F.3d 1410, 1414 (Fed.Cir. 1996) mandates a conclusion that Jade Trading was a partnership within the meaning of the Internal Revenue Code and must be recognized as such for tax purposes, citing the Court's language:

> Transpac was a partnership under the Internal Revenue Code even though it was organized and operated for improper or illicit purposes. As the Court of Federal Claims noted, the broad definition of "partnership" in the Internal Revenue Code does not limit such entities to those organized for lawful businesses. Section 761(a) of the code defines "partnership" to include a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on.

Plaintiffs attempt to stretch the holding of *Transpac* too far—the Federal Circuit there did not reach the issue of whether a partnership can be disregarded where its purpose and activities indicate it was formed and operated for tax avoidance. In *Transpac*, the Court refused to allow Transpac to disavow its partnership status on the ground that the partnership was formed for a fraudulent purpose, where Transpac had alleged it was a partnership and filed partnership tax returns for the two tax years at issue and was

seeking to escape its partnership designation to avoid the six-year statute of limitations. The Federal Circuit held that Transpac could not undo its partnership form to avoid a longer statute of limitations which was triggered because it had filed fraudulent tax returns with the purpose of evading taxes. The *Transpac* court's refusal to allow a partnership to shed its partnership form to avoid the statute of limitations is not precedent for this Court to render Jade Trading's partnership form impervious to an inquiry into whether its activities may have been undertaken for the purpose of tax avoidance.[6]

Unlike the Federal Circuit in *Transpac*, the D.C. Circuit has addressed this allegation in *Andantech*, 331 F.3d at 978 and *ASA Investerings*, 201 F.3d at 512–13. The D.C. Circuit's analysis in *Andantech* is instructive for purposes of the instant motion:

> We stated in *ASA Investerings* that the basic inquiry in which we engage when determining whether a partnership is valid for tax purposes is "whether, all facts considered, the parties intended to join together as partners to conduct business activities for a purpose other than tax avoidance." *ASA Investerings*, 201 F.3d at 513. *See also Comm'r v. Culbertson*, 337 U.S. 733, 742–43, 69 S.Ct. 1210, 1214–15, 93 L.Ed. 1659 (1949). We held in *ASA* that merely "engaging in business activities [is not] sufficient to validate a partnership" and that "the absence of a nontax business purpose is fatal" to the validity of a partnership. *ASA Investerings*, 201 F.3d at 512–13.

331 F.3d at 978.

Clearly, the basic inquiry the Court must make is factual, and this case is not capable of resolution on summary judgment at this early stage. As the Supreme Court recognized in *Commissioner v. Culbertson*, 337 U.S. 733, 741–43, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949):

> [T]he question whether the family partnership is real for income-tax purposes depends upon 'whether the partners really

and truly intended to join together for the purpose of carrying on business and sharing in the profits and losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provision ... We see no reason why this general rule should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes.'

> The question is ... whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted.

The Court continued in a footnote:

> Nearly three-quarters of a century ago, Bowen, L.J., made the classic statement that "the state of a man's mind is as much a fact as the state of his digestion." ... State of mind has always been determinative of the question whether a partnership has been formed as between the parties. (citations omitted)

*Culbertson*, 337 U.S. at 742, n. 12, 69 S.Ct. 1210. Despite this longstanding precedent establishing that the bona fides of a partnership for tax purposes depends on a factual inquiry—examining intent, to be determined by testimony and conduct as well as the parties' agreement, Plaintiffs assert that Jade Trading must be recognized as a partnership for tax purposes because it had all the trappings associated with a partnership and carried on a financial operation or ven-

---

**6.** It appears that, depending upon what defense Defendant adopts in this case, there may be an issue as to what the Court's inquiry must be—i.e. whether the entity was formed and the transaction, conducted, "solely" for tax avoidance or "principally" for tax avoidance. Of course, the Court does not address that matter now.

ture through extensive investment activities. In so arguing, Plaintiffs urge the Court to accept the affidavit of Ari Bergmann, the Senior Managing Member of Sentinel Advisors, LLC as "incontrovertible" in its recitation of Jade Trading's activities, transactions, and agreement, and grant Jade Trading summary judgment recognizing its partnership for tax purposes. To so rule, without giving Defendant the opportunity for adequate discovery would "railroad" Defendant by preventing it from developing its case and prematurely resolving on motion, a matter that precedent suggests dictates a trial.

Under Rule 56(f) of the Rules of the Court of Federal Claims (RCFC), a court may refuse or continue a motion for summary judgment to permit additional discovery if the nonmovant explains by affidavit why it cannot fulfill the requirements of RCFC 56(e), under which it must "set forth specific facts showing that there is a genuine issue for trial." As the United States Court of Appeals for the Federal Circuit has recognized, "when the discovery is reasonably directed to 'facts essential to justify the party's opposition,' ... such discovery must be permitted or summary judgment denied." *Opryland USA Inc. v. The Great Am. Music Show, Inc.*, 970 F.2d 847, 852 (Fed.Cir.1992) (citation omitted).

In *Opryland*, the Federal Circuit reversed the entry of summary judgment by the trial tribunal and found error in that tribunal's refusal to allow discovery pursuant to Rule 56(f). *Id.* at 853. The court explained:

Since Opryland has shown a sufficient basis for its need of additional discovery, it can not be deprived of the discovery needed to place at issue material factual questions in opposition to the motion. That is the safeguard to which Rule 56(f) is directed. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (Rule 56(f) provides nonmovants with protection from being "railroaded" by premature summary judgment motions); *National Life Ins. Co. v. Solomon,* 529 F.2d 59, 61 (2d Cir.1975) (summary judgment is

improper when the opposing party has yet to exercise pretrial discovery) ....

*Opryland,* 970 F.2d at 852.

In *Theisen Vending Co. v. United States,* 58 Fed.Cl. 194, 197 (2003), this Court recognized that "Rule 56(f) 'motions are generally favored and should be liberally granted,'" quoting *Stearns Airport Equip. Co. v. FMC,* 170 F.3d 518, 534 (5th Cir.1999).

■ In *Theisen,* the Court further set forth a five-pronged test which a nonmovant must meet to obtain Rule 56(f) relief:

(1) specify the particular factual discovery being sought, (2) explain how the results of the discovery are reasonably expected to engender a genuine issue of material fact, (3) provide an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue, (4) recite the efforts previously made to obtain those facts, and (5) show good grounds for the failure to have discovered the essential facts sooner.

*Theisen,* 58 Fed.Cl. at 198.

■ Defendant has unquestionably met the first three factors here. This case presents allegations involving whether a partnership was formed and engaged in activities to avoid tax—a quintessential example of a fact-intensive inquiry where summary judgment would be inappropriate at such an early juncture. The declaration of Mr. Drew explains that Defendant needs discovery to determine what transactions occurred, what the intent of the parties was, and whether any business purpose and profit motive existed for the transactions other than attempting to shelter income through the generation of artificial losses.[7] At the Court's directive, Defendant served written discovery requests to facilitate the Court's review of this motion and enable the Court to better understand the nature of the discovery Defendant required to respond to the motions. Status Conference, Mar. 17, 2004, Tr. at 3. Defendant served 54 requests for admission, a follow-up interrogatory and requests for production of documents. However, Plaintiffs objected to

7. Defendant also contends that it needs to investigate this case with its own experts and under-

stand the parameters of this complex transaction.

Requests for Admission Nos. 11–15, 36, 38, 46–54 which set forth steps Defendant claims created fictitious losses, and they objected to Request for Admissions Nos. 20–23 which contend that Plaintiffs' activities constituted a single transaction. Defendant asserts that these facts can be clarified by deposing Plaintiffs, as well as personnel at BDO Seidman LLP, Sentinel and AIG International who participated in these transactions. Def.'s Supp. Brief of May 3, 2004 at 3.

Defendant also satisfies the last two *Theisen* factors because only preliminary discovery has been had, and there was no failure on Defendant's part to have discovered these facts any sooner in this litigation. The as yet unprobed nature of the transactions and intent of the parties which are at the heart of this case satisfy Rule 56(f)'s requirement that Defendant could not present facts essential to its opposition to Plaintiffs' partial summary judgment motions at this juncture. In the words of the *Theisen* court, Defendant has convinced the Court of its "bona fides ... in opposing summary judgment." 58 Fed.Cl. at 198.

In further considering the parties' helpful oral argument and supplemental briefing as well as Plaintiffs' discovery responses, the Court believes it would be imprudent to limit Defendant's discovery to matters "essential" to oppose Plaintiffs' motions.[8] Indeed, it appears that a full picture of what transpired here—an understanding of the entity and transaction(s), the intent of the parties and their conduct is necessary for the Court to resolve this action in any posture. Rather, than delay full discovery pending resolution of the motions, the Court believes both parties would be better served by pursuing discovery and deferring any dispositive motions until further development of the record.[9]

*Plaintiffs' Third Motion for Partial Summary Judgment*

In their third motion, Plaintiffs allege that the currency option transactions at issue were foreign currency transactions within the meaning of Section 988 and cannot be offset against each other. Defendant contends that it is doubtful whether Section 988 has any applicability whatsoever to the factual allegations here. Again, Defendant is entitled to conduct discovery to determine and understand the intent of Plaintiffs in entering into the partnership and conducting these transactions. Moreover, even were this motion ripe for resolution, the Court at this point cannot conclude that a resolution of this motion would advance the case. In sum, the third motion must be refused at present both because the applicability of Section 988 to the instant transactions cannot be ascertained without further development of the record and because it is unclear whether resolution of this case need entail resolution of this issue as framed by Plaintiffs.

### Conclusion

1.  Defendant's motion under RCFC 56(f) is **GRANTED**, and Plaintiffs' first, second and third motions for partial summary judgment are **DENIED, WITHOUT PREJUDICE.**

2.  A complete version of parties' Joint Preliminary Status Report including a discovery plan, shall be filed by **May 17, 2004.**

4.  The Court will conduct a Preliminary Scheduling Conference on **May 19 at 1:00 p.m. EST** at the Court. The Court will address any outstanding discovery issues at that conference and set a schedule. A court reporter will transcribe the proceedings.

5.  The parties shall file courtesy copies of any submissions via facsimile machine, (202) 219–9557, or by e-mail, williams_chambers @ao.uscourts.gov.

---

8.  The Court heard oral argument on Defendant's Motion for Rule 56(f) Relief on April 27, and the parties filed supplemental briefs on May 3, 2004.
    Plaintiffs have objected to many of Defendant's requests on the ground that they are not "essential" to enable it to respond to Plaintiffs' motions. Upon further review of the record, the Court is convinced that continuing such hairsplitting debates would be a waste of the parties' time in the context of this complex case. As such, the Court is no longer restricting either party in discovery to matters "essential" to the motions.

9.  The Court appreciates both counsel's efforts to move this case thus far.