**JADE TRADING, LLC, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 03–2164T.**

United States Court of Federal Claims.

April 22, 2005.

David D. Aughtry, Chamberlain, Hrdlicka, White, Williams & Martin, Atlanta, Georgia, and Linda S. Paine, Houston, Texas, for Plaintiffs.

Stuart J. Bassin, U.S. Department of Justice, Tax Division, Washington, D.C., for Defendant. Eileen J. O'Connor, Mildred L. Seidman, David Gustafson, William K. Drew, and Matthew C. Hicks, U.S. Department of Justice, Tax Division, Of Counsel.

Ellis Reemer and Diane Erbsen, DLA Piper Rudnick Gray Cary, New York City, for BDO Seidman, LLP.

## ORDER AND MEMORANDUM OPINION DENYING BDO SEIDMAN, LLP'S MOTION TO QUASH SUBPOENA

WILLIAMS, Judge.

This matter is before the Court on BDO Seidman, LLP's (BDO) motion to quash a subpoena served by Defendant on September 30, 2004, seeking taxpayer information of its nonparty clients.[1] Because the subpoenaed material is relevant to this action and no privilege or statute prevents disclosure, BDO's motion to quash is denied. The Court directs BDO to notify its clients of this ruling and defers BDO's deadline for complying with the subpoena to permit its nonparty clients to move to intervene in this matter for the limited purpose of objecting to disclosure of their tax information.

---

1. BDO filed this motion on March 11, 2005, Defendant responded on March 25, 2005, BDO and Plaintiffs replied to Defendant's opposition on April 11, 2005. Oral argument was held on April 15, 2005, and BDO filed a supplemental brief on April 20, 2005.

### Background[2]

Plaintiffs bring this action under Section 6226 of the Internal Revenue Code challenging the Internal Revenue Service's (IRS) adjustment of their tax liability and assessment of penalties for 1999. In the Final Partnership Administrative Adjustment (FPAA) at issue, the IRS disallowed capital losses approximating $40,000,000 and assessed penalties of some $4,000,000, on the Ervin brothers, the real parties in interest.[3]

Defendant contends that Jade was formed for the purpose of creating artificial tax losses intended to eliminate federal taxes on unrelated capital gains received by the Ervins in 1999. Plaintiffs counter that Jade Trading was a bona fide partnership, formed for the express purpose of making money from trading, and not with a principal purpose of reducing substantially the partners' aggregate federal tax liability.

The Government asserts that after Plaintiffs received roughly $40,000,000 as a result of the sale of their cable business in 1999, they were approached by tax and financial service providers which presented various stratagems to "'shelter' those gains from federal income taxation." Defendant's Preliminary Statement of Contentions (Def.'s Cont.) at 4. The Government contends that after considering stratagems presented by financial services professionals, including BDO, the Ervins entered into the transactions at issue. These stratagems, the Government asserts, formed the basis of the Ervins' position that they had realized a capital loss of $40,000,000, which offset the capital gains realized from the sale of their cable business.

On September 30, 2004, Defendant served a subpoena seeking several categories of items on nonparty BDO, which Defendant characterizes as the promoter of the alleged tax shelter. On March 11, 2005, BDO moved to quash the subpoena with respect to one narrow category of documents—"all Form 1040 cover pages, Schedule D and Schedule K–1 for the years 1999–2000" for 46 BDO clients who are not parties here. BDO asserts that the private tax return information of its nonparty clients is protected from disclosure under Section 6103 of the Internal Revenue Code, and that the subpoena is overly broad and demands irrelevant documents. Defendant argues that it requires the private tax return information of the nonparties because it intends to offer "pattern evidence" to support its position that Plaintiffs' transaction did not "represent routine investment activity undertaken for economic profit." Def. Opp. at 1.

### Discussion

#### Relevance

Rule 45(c)(3)(A)(vi) of the Rules of the United States Court of Federal Claims (RCFC) provides: "[o]n timely motion, the court shall quash or modify the subpoena if it subjects a person to undue burden." In determining whether a subpoena presents an undue burden, courts consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.2004). In ruling on a motion to quash, there is an underlying relevance determination that must be made with respect to all discovery in accordance with Rule 26(b) RCFC. *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322–23 (Fed.Cir.1990); *St. Matthew Publishing, Inc. v. United States*, 41 Fed.Cl. 142, 144–45 (1998). As the Feder-

---

**2.** The background is derived from the allegations in the Complaint, and the parties' and BDO's submissions on the instant motion. This background is set forth in more detail in this Court's opinion denying Plaintiffs' motions for partial summary judgment. 60 Fed.Cl. 558 (2004).

**3.** Plaintiffs in this action are Robert W. Ervin and Laura Kavanaugh Ervin on behalf of Ervin Capital LLC, which was a partner in Jade Trad-

ing. Ervin Capital LLC is an entity solely comprised of Robert Ervin and Laura Kavanaugh Ervin. Both of Robert Ervin's brothers, Gary Ervin and Tim Ervin, are also real parties in interest in this action because each has his own limited liability company which was a partner in Jade Trading, and each will be affected by any determination of tax liability rendered by this Court.

al Circuit has recognized, relevance for the purposes of Rule 26 is broadly construed. *Katz v. Batavia Marine & Sporting Supplies,* 984 F.2d 422, 424 (Fed.Cir.1993). While broad discovery is generally encouraged, a right to discovery is not unlimited. *Micro Motion, Inc.,* 894 F.2d at 1322 (citing *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

■ The Government argues that the information sought in the subpoena will "tend to support the Government's position that Jade's transactions are prearranged shams." Def.'s Opp. at 11. In particular, the Government represented:

> defendant intends to offer pattern evidence regarding virtually identical tax shelter transactions sold by BDO to other taxpayers which follow a similar pattern to support its contentions. This evidence will establish that the participants in BDO's Son of BOSS transactions generally engaged in transactions which differed in material respects from conventional market activity. Likewise, defendant contends that evidence regarding the tax situations of other participants in BDO's Son of BOSS tax shelter transactions will show that they were well-suited to achieve their tax reduction purposes, but ill-suited to achieve the pre-tax profit motives professed by the participants.

Def.'s Opp. at 2. Defendant submits that it requires the cover pages of BDO's clients' Form 1040's to learn what it has not been able to ascertain from any other source in this litigation: the amount of capital gains and losses claimed by these taxpayers and the dates on which they were incurred. Tr. (Apr. 15, 2005) at 35. Although this type of a relevance determination has not been addressed by the Federal Circuit, other courts, in evaluating the *bona fides* of taxpayers' transactions, have relied upon similar evidence of transactions of nonparty taxpayers who used the same broker.

In *Brown v. Comm'r of Internal Revenue,* the IRS disallowed claimed losses under 26 U.S.C. § 165 finding that the forward contract transactions between the petitioners and the broker-dealer/promoter were shams and mere window dressing, "generated in form without any substance." 85 T.C. 968, 971–72, 1985 WL 15423 (1985). Importantly for purposes of the present motion, the Tax Court held that evidence of the promoters' dealings with participants other than the petitioners was "admissible in order to determine whether the transactions with petitioners [were] bona fide." *Id.* at 972 n. 6. In analyzing whether the transactions at issue were shams, the Court noted that the contracts at issue operated identically for all other participants. *Id.* at 988. *Accord, American Electric Power Co. v. United States,* 191 F.R.D. 132, 140–41 (S.D.Ohio 1999) (refusing to quash a government subpoena seeking names of nonparty clients of insurance broker noting that FED. R. CIV. P. 26(b) permitted discovery of the identity of persons having knowledge of any discoverable matter and that the clients' identity could be adequately protected under an agreement).

The Court in *Fox v. Comm'r,* 82 T.C. 1001, 1017, 1984 WL 15588 (1984) also considered nonparty transactions, examining the similarities between the transactions of petitioner and other clients of the same broker in holding that petitioners' losses were not properly deductible under Section 165. The Court cited the similarities among customers of the broker, including the timing, sequences and prices of trading and the lack of customers' net economic profits after commissions.

Similarly, in the instant case, the amount and dates of capital gains and losses recognized by the nonparty taxpayers in 1999–2000 are potentially relevant to the Government's contention that the activity engaged in by the Ervins and others who participated in this type of transaction, was unlike typical marketplace transactions. Thus, the subpoenaed taxpayer information is relevant for discovery purposes.[4] Moreover, BDO has

---

4. Plaintiffs argue that they cannot investigate and try the motives of 30–50 sets of unrelated people and entities at one time, and that admissibility of this nonparty taxpayer information would undermine their right to a fair trial. Plaintiffs' Reply to Defendant's Opposition to Motion to Quash Subpoena at 1. The Court is not

failed to demonstrate why the burden or expense of the proposed discovery outweighs its likely benefit. RCFC 26(b)(2); 45(C)(3)(A)(iv).[5]

### 26 U.S.C. § 6103

■ BDO argues that 26 U.S.C. § 6103 bars production of the confidential third-party tax information to the Department of Justice (DOJ) for several reasons. First, BDO claims the statute prohibits the IRS from disclosing confidential tax information to government agencies, and DOJ should not be permitted to do an "end run" around the statute and obtain confidential taxpayer information it cannot get directly from the IRS by subpoenaing it from BDO.[6] Second, BDO argues that any third-party information produced to DOJ via the subpoena will have to be turned over to Plaintiffs under the discovery rules—in clear contravention of Section 6103, which prohibits any officer or employee of the United States from disclosing return information obtained by here "in any manner." Finally, BDO contends that Section 6103 bars the use and therefore the discovery of the confidential tax information in this proceeding because the statutory exception permitting use of such taxpayer information in judicial and administrative proceedings does not apply here.

Because Section 6103 only prohibits disclosure of taxpayer return information as defined by Section 6103 and such definition only encompasses tax information "filed with," "received by, recorded by, prepared by, furnished to, or collected by" the Secretary of Treasury or the IRS,[7] copies of tax returns given to BDO by its clients do not fall within Section 6103's prohibition. Nor does this statute prohibit DOJ's intended use of this information in this litigation.

When interpreting a statute, courts must first examine the plain language of the stat-ute. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). ("The starting point of every case involving construction of a statute is the language itself."); *see Weddel v. Sec'y of Dep't of Health & Human Servs.*, 23 F.3d 388, 391 (Fed.Cir.1994) ("Under the traditional rule of statutory interpretation, courts must look first to intrinsic evidence of intent (*i.e.,* the textual language) alone."). The statute only prohibits disclosure of a "return" or "return information."

Section 6103(a)(1) provides in part:

> *Returns and return information* shall be confidential, and except as authorized by this title, no officer or employee of the United States shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.

26 U.S.C. § 6103(a)(1) (emphasis added). Thus, at the outset the Court must determine whether the tax information of nonparty taxpayers in the possession of BDO constitutes a return or return information.

"Return" is defined as:

> (1) Return.—The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title *which is filed with the Secretary* by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed. (emphasis added)

26 U.S.C. § 6103(b)(1).

"Return information" is defined as:

---

5. BDO simply asserts that since Section 6103 bars the discovery of the returns, the returns are irrelevant and discovery of them necessarily imposes undue burden. BDO's Reply at 4, n. 6. This does not establish burdensomeness. *Truswal Systems Corp. v. Hydro-Air Eng'g Inc.*, 813 F.2d 1207, 1211 (Fed.Cir.1987).

ruling on admissibility of the subpoenaed information at this time.

6. BDO does not claim the taxpayer information is privileged, but it does assert its "fiduciary obligation to prevent the unwarranted and unauthorized disclosure of the Unrelated Party Tax Returns." BDO's Reply at 3, n. 5.

7. The "Secretary" is defined as the Secretary of the Treasury or any subordinate and includes the IRS. 26 U.S.C. § 7701(a)(11).

(2) Return information.—The term "return information" means—a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over assessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, *received by, recorded by, prepared by, furnished to, or collected by the Secretary* with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A) (emphasis added). BDO argues that the nonparties' tax information in its possession constitutes "return" or "return information" because these documents are identical to copies of documents their clients filed with the IRS. Although BDO correctly asserts that the *information* in its clients' 1040's and Schedules filed with the IRS is identical to these materials in its possession, the statute does not broadly prohibit disclosure of tax information voluntarily given to nongovernmental entities by taxpayers. Rather, the statute prohibits disclosure of return tax information "filed with the Secretary" under 6103(b)(1) and tax information "received by, recorded by, prepared by, furnished to or collected by the Secretary" under 6103(b)(2).

Although the United States Court of Appeals for the Federal Circuit has not addressed the scope of Section 6103, several other circuits have adopted this narrow construction.[8] In *Baskin v. United States*, 135 F.3d 338, 342–43 (5th Cir.1998), the Fifth Circuit rejected a claim that Section 6103 prevented disclosure of information obtained by an IRS agent from a grand jury and not from the IRS itself. In so holding, the Fifth Circuit explained:

[T]o be "return information" any information must first be "received by, recorded by, prepared by, furnished to, or collected by" the IRS. The plain language of the statute reveals that "return information" must be information which has somehow passed through, is directly from, or generated by the IRS. In sum, section 6103 requires that the source of the disclosed information must have been the IRS in order for there to be a violation of the general prohibition against the disclosure of return information.

*Id.* at 342 (internal citations omitted).

Similarly, in *Ryan v. United States*, 74 F.3d 1161, 1163 (11th Cir.1996), the Eleventh Circuit rejected a claim that disclosure to a reporter of prosecution memoranda prepared by the DOJ summarizing the facts in a criminal tax case violated Section 6103. The Court noted that the statutory definition of "return information" is confined to information that has passed through the IRS. *Id.* The Court in *Ryan* held that "return information" did not include information collected by the U.S. Attorney's office even with the assistance of an IRS agent because it was not information belonging to the Secretary of Treasury or the IRS. *Id.* Thus, no violation of the statute occurred because Section 6103 "protects only information filed with and disclosed by the IRS, not all information relating to any tax matter." *Id.*

In *Stokwitz v. United States*, 831 F.2d 893, 896 (9th Cir.1987), the Ninth Circuit held that Section 6103 was not violated when naval employees seized copies of personal tax returns from an employee's briefcase in his government work space and gave them to naval investigators. In holding that Section 6103 did not apply, the Ninth Circuit explained: "the central fact evident from the legislative history, structure, and language of section 6103 (including the definitions of 'return and return information') [is] that the statute is concerned solely with the flow of

---

**8.** It appears that the Federal Circuit has only mentioned Section 6103 once, in the context of erroneous disclosure by an IRS employee. *See Zingg v. Dept. of Treasury*, 388 F.3d 839, 843 (Fed.Cir.2004) ("Maintaining such confidentiality is critical to our system of taxpayer disclosure of

financial information in tax returns. 'Employees receive annual training and updates on disclosure. [Zingg] concedes she is well aware of the need to maintain the confidentiality of taxpayer records.' ")

tax data to, from, or through the IRS." *Id.* at 896. The court further noted:

> the statutory definitions of "return" and "return information" to which the entire statute relates, confine the statute's coverage to information that is *passed through the IRS.* . . . The companion Treasury regulations, similarly, are exclusively concerned with disclosure *by the IRS. See* Treas.Regs. § § 301.6103(a)–1 to (p)(7)–1 (1986)

*Id.* at 895–96 (emphasis added). Finally, *Stokwitz* recognized that the statute does not evince a Congressional intent to prohibit the production of tax returns in the hands of non-governmental third parties pursuant to a subpoena in civil litigation. As the Court stated in *Stokwitz,* 831 F.2d at 896, "there is no indication in either the language of Section 6103 or its legislative history that Congress intended to enact a general prohibition against public disclosure of tax information . . . the Senate report expressly disclaimed any intention to 'limit the right of an agency (or other party) to obtain returns or return information directly from the taxpayer through the applicable discovery procedures,' " (internal citation omitted). *See also Shell Petroleum, Inc. v. United States,* 46 Fed.Cl. 719, 722 (2000) ("Section 6103 does not prohibit the disclosure of tax return information that comes from a source other than the IRS"). *Confidential Informant 92–95–932X v. United States,* 45 Fed.Cl. 556, 557–58 (2000) (noting that 26 U.S.C. § 6103 "governs the confidentiality and disclosure of returns and return information . . . and prohibits the IRS from disclosing a tax return or return information to the public.").[9]

The Legislative History further indicates that Section 6103 only prohibits disclosure by the IRS personnel. Section 6103 was amended in 1976 in an effort to "create[ ] a comprehensive scheme for regulating the release of tax returns and information collected to determine tax liability".[10] *Chamberlain v. Kurtz,* 589 F.2d 827, 833–34 (5th Cir.1979). The catalyst behind the amendment to Section 6103 is stated in the Senate Report as follows:

> It has been stated that the IRS probably has more information about more people than any other agency in this country. Consequently, almost every other agency that has a need for information about U.S. citizens, therefore, *logically seeks it from the IRS.* However, in many cases the Congress has not specifically considered whether the agencies which have access to tax information should have that access. The statutory rules governing the disclosure of tax information have not been reviewed ˙by the Congress for 40 years. Since that time a number of rules allowing disclosure of tax information to other government agencies have been established by executive order and regulation.

S.Rep. No. 94–938, at 316–17 (1976), U.S.Code Cong. & Admin.News 1976, pp. 2897, 3746 (emphasis added). *See also* S.Rep. No. 94–938, at 343, U.S.Code Cong. & Admin.News 1976, pp. 2897, 3772 ("It is intended that, to the extent practical, all disclosures of return information be made in documentary form in order to protect the privacy of the taxpayer *and to protect the IRS personnel making the disclosure* from subse-

---

**9.** Moreover, the statute vests authority in the Secretary of the Treasury to prescribe the mechanism for disclosure requests and authorized disclosures, further suggesting the statute governs disclosure by the IRS. Section 6103(p)(1) provides that any request for, and actual inspection or disclosure of, return or return or return information "shall be made in such manner and at such time and place as shall be prescribed by the Secretary." Furthermore, Section 6103(p)(4) provides safeguards that any federal agency receiving return or return information must follow. Notably, any such agency must establish and maintain "a permanent system of standardized records" to the satisfaction of the *Secretary.* Section 6103(p)(4)(A) (emphasis added).

**10.** Even when a court is confronted with a statute that is apparently unambiguous, the court may turn to legislative history to confirm that the court's interpretation of the statute reflects congressional intent. *Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 395–96 (Fed.Cir.1990) ("[W]hen the plain meaning of the statutory language in question would resolve the issue before the court, the legislative history should usually be examined at least 'to determine whether there is a clearly expressed legislative intention contrary to the statutory language.' " *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed.Cir. 1989)).

quent charges that information was improperly disclosed") (emphasis added).

BDO argues further that "return" and "return information" can only be disclosed "as authorized by this title." BDO asserts that the statute's exception for disclosure in a "judicial proceeding pertaining to tax administration" in Section 6103(h)(4) does not apply here, thus prohibiting disclosure. While Section 6103(h)(4) provides four exceptions to the prohibition against disclosure, these exceptions are not triggered here because the prohibition against disclosure does not apply to BDO in the first instance. Section 6103(h)(4), like Section 6103 generally, relies upon the same terms—"return" and "return information," which prohibit disclosure only by the IRS itself.[11]

### Plaintiffs' Motion to Strike

Plaintiffs ask the Court to strike newspaper articles that discuss the settlements between IRS and other entities that engaged in Son of BOSS transactions, which were attached to Defendant's opposition to BDO's motion to quash. Plaintiff argues that these articles are "part of the campaign of innuendo and intimidation that Defendant seeks to substitute for a clear-headed examination of the issues in this case ..." Pls.' Reply at 9. Because these materials are not properly part of the record in this discovery dispute, Plaintiffs' request that the Court strike the attachments is **GRANTED**.

### Conclusion

For the foregoing reasons, BDO's motion to quash is **DENIED**.

1. No later than **April 27, 2005,** BDO shall notify its 46 clients affected by this ruling that the Court has determined to order disclosure of their tax information.

2. Any BDO client affected by this ruling may file a motion to intervene in this action for the limited purpose of objecting to such disclosure by **May 4,** 2005, and shall serve BDO and the parties herein.

3. BDO shall comply with the subpoena on **May 5, 2005,** if no motions to intervene and objections by BDO's clients have been filed.

4. In the event any objection is filed, BDO shall defer complying with the subpoena with respect to that objecting client pending further order by this Court.

5. The parties and BDO may submit a joint motion for a Protective Order covering these nonparty taxpayer documents, and shall do so by **May 1, 2005.**

6. The CLERK of the Court is directed to serve a copy of this order on counsel for the subpoenaed entity, BDO:

Ellis L. Reemer
DLA PIPER RUDNICK GRAY CARY
1251 Avenue of the Americas
New York, N.Y. 10020

---

11. Moreover, the Senate Report expressly references disclosure by "the Secretary", further indicating Congress only intended 6103(h)(4), like 6103 generally, to apply to disclosure by the IRS:

The *Secretary will have the discretion to refuse to disclose third party return information* for purposes of use in a tax proceeding if he determines that such disclosure would identify a confidential informant or seriously impair a pending civil or criminal tax investigation. S.Rep. No. 94–938, at 326, U.S.Code Cong. & Admin.News 1976, pp. 2897, 3756.